**WALL INDUSTRIES, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 448–82T.**

United States Claims Court.

Nov. 22, 1988.

---

5. Plaintiff's other arguments have been considered and found to be without merit.

Walter J. Rockler, Washington, D.C., attorney of record for plaintiff.

Kenneth C. Gobetz, Washington, D.C., with whom was Asst. Atty. Gen. William S. Rose, Jr., for defendant.

OPINION

REGINALD W. GIBSON, Judge:

*Introduction*

Plaintiff, Wall Industries, Inc. (Wall), by its application, seeks attorney fees pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412. On May 28, 1986, this court filed its opinion granting summary judgment in favor of Wall in the amount of $339,723 plus interest in a tax refund suit against the United States. *Wall Industries, Inc. v. United States,* 10 Cl.Ct. 82 (1986). This court held therein that Wall had timely filed a "formal" claim for refund with respect to $93,846 of the foregoing amount and also established the existence of a valid "informal" claim with respect to the full amount of the claim, *supra.* It was further held that Wall, as the assignor of its right to the proceeds of the judgment, was not precluded by the Anti–Assignment Act, 31 U.S.C. § 3727, 41 U.S.C. § 15, from maintaining its refund action against the United States.

In this action, Wall must establish first its eligibility to receive an award of attorney fees under the EAJA in light of the fact that it has not "incurred" any expenses for any such fees with respect to its refund action, *supra,* or the present action. The government, in order to defeat Wall's application, must then show that its positions were "substantially justified," *i.e.,* were reasonable. Should the government fail to do so, and if the government also fails to show the existence of special circumstances that make an award unjust, Wall is entitled to a recovery of fees. Such fees by statute, however, are limited to a rate of $75 per hour unless, of course, Wall can show that a special factor, such as the limited availability of qualified attorneys for that particular proceeding, entitles it to a recovery computed at a rate in excess of $75 per hour.

Upon a thorough analysis of the pleadings, and without oral argument, we deny plaintiff Wall's application for attorney fees because neither it nor Arthur Young,[1]

---

1. *See* Plaintiff's Motion for Enlargement of Time and Modification, at 3; Affidavit of Walter J. Rockler.

the real party in interest represented by Wall, satisfies the threshold eligibility requirements of the EAJA, 28 U.S.C. §§ 2412(d)(1)(A) and (d)(2)(B).

Jurisdiction of this court rests on the EAJA, 28 U.S.C. § 2412(d)(2)(F), and 28 U.S.C. § 1491 (1982).

*Statement of Facts*

On May 28, 1986, this court's opinion granted summary judgment regarding a tax refund in the amount of $339,723 for plaintiff Wall against the United States. Both parties stipulated to the substantive facts on the merits that Wall, because it realized a net operating loss of $701,694 (1977) that could be carried back to 1974, had overpaid its corporate income taxes for the taxable year 1974 by $339,723.[2] The dispositive issue was limited, therefore, to the question—whether this court had subject matter jurisdiction in that it was contended that plaintiff failed to *timely file* an administrative claim for refund with the Internal Revenue Service. *See* 26 U.S.C.A. §§ 6511(a) and 7422(a).

The government conceded that Wall had filed a timely *formal* claim on June 10, 1981. Nevertheless, the position taken by the government was that said formal claim was timely *only* with respect to the $93,846 in taxes paid within two years prior to the filed June 1981 claim for refund and not the remaining $245,887 ($339,723 minus $93,846). 26 U.S.C. § 6511(b)(2)(B). Therefore, concluded the government, Wall was not entitled to the entire $339,723 pursuant to the filing of the *formal* claim, but rather *only* $93,846 which, even though the government conceded that Wall was entitled to such, it did not refund to Wall.[3]

The court agreed with this reasoning, given § 6511(b)(2)(B), and held that the *"formal"* claim filed on June 10, 1981 was not timely as to the *entire* $339,723, but only as to the $93,846 paid within the two-year period immediately preceding the filing of the claim. In so holding, the court rejected Wall's expansive argument that the *formal* claim was efficacious as to the total amount demanded because the two-

year time limitation for filing a claim pursuant to § 6511(a) can be applied with the limitation on amount provision of 26 U.S.C. § 6511(d)(2)(A).

However, by arguing in the alternative, Wall successfully established that it did in fact timely file an "informal" administrative claim for refund in the amount of $339,723. In this connection, Wall based its arguments on the assertion that an IRS agent, who had performed numerous audits of Wall's tax returns (*i.e.*, 1973–1976 and 1978) and inspected two others (1977 and 1979), was sufficiently noticed and apprised of Wall's expectation of a refund due to a 1977 NOL carryback to 1974, and that therefore no formal claim was necessary.

The defendant, on the other hand, maintained that Wall had failed to distinguish its situation, where the government merely possesses general information from which entitlement to a refund might be deduced, from those where the government has received a *direct* request for a refund. Furthermore, contended the defendant, assuming the existence of a valid *informal* claim, Wall was, nevertheless, precluded from claiming a refund on such basis because the government specifically requested that it file a *formal* claim, which it failed to do.

In resolving the foregoing issues, this court held that, collectively, Wall's various tax returns containing a balance sheet entry styled "Federal Income Tax Receivables," etc., purporting to reflect the amount of Wall's claim here in question, Wall's consolidated financial statements for 1977 and 1978 containing a similar entry, and the content of the 1978 audit report of the IRS agent acknowledging Wall's net operating loss of 1977 formed the requisite "written component" to establish an efficacious *informal* claim. Additionally, this court found that the request for a formal claim that the defendant is alleged to have made of Wall was not clear in meaning and could therefore not be given effect.

The last argument made by the government, *i.e.*, purely legal, was that the Anti-

---

2. *See Wall Industries,* 10 Cl.Ct. at 85 n. 1.

3. *See* Defendant's Opposition Brief at 10–11.

Assignment Act, 31 U.S.C. § 3727, precluded Wall from maintaining its action because it had assigned to its accounting firm, Arthur Young, the *proceeds* of any resulting refund award. The Anti–Assignment Act, of course, only precludes assignees, not assignors, from maintaining suits against the defendant, and, as Wall was an assignor and not an assignee, the court wholly rejected that argument of the defendant. Summary judgment in favor of Wall was entered for $339,723 plus interest. For a more detailed explication of the background facts, the reader is referred to *Wall Industries, Inc. v. United States*, 10 Cl.Ct. 82 (1986).

Present, but not dispositive in the earlier decision of this court, were the special circumstances surrounding Wall's assignment of its right to the refund proceeds from any judgment to Arthur Young, its certified public accountants. In settlement of any claim Wall might have had against Arthur Young, with respect to the duty to timely file (or the failure thereof) the refund claim in question, Arthur Young paid Wall $291,045. This act was manifested in an agreement, styled Memorandum of Agreement And Release, entered into by Wall and Arthur Young on May 17, 1982.[4] By the terms of said agreement, Arthur Young took "full responsibility for the conduct of such contest by Wall Industries, including selection of legal counsel and payment of all legal fees and expenses."[5] Wall was required in consideration of the foregoing payment to it to "pay Arthur Young or its successors and assigns an amount ... equal to all proceeds, including interest and attorneys fees and expenses (collectively the "Proceeds") that Wall Industries in fact receives from the United States in connection with the 1977 Claim for Refund."[6] Arthur Young also retained sole authority to make and accept settlement offers, and to determine the strategy, tactics, and legal arguments to be used by Wall in the refund litigation.[7] Said agreement clearly manifests the understanding that Wall had little more than a duty to cooperate with Arthur Young in litigating the timely filing issues in its name and subject to the *total* discretion of its accountants.[8]

Accordingly, and against this background, Wall filed subject application seeking legal fees, totalling $88,581.25, under the Equal Access to Justice Act (EAJA) on November 13, 1986, within 30 days of the voluntary withdrawal of the appeal by the defendant.

*Contentions of the Parties*

Plaintiff:

Wall brings this application for attorney fees under the EAJA, 28 U.S.C. § 2412, claiming, first, that the position arguments put forth by the defendant were not "substantially justified," as contemplated by said statute and as judicially construed.[9] Second, Wall claims that there were no special circumstances in existence that would make an award of attorney fees

---

4. *See* Plaintiff's Cross–Motion for Summary Judgment Memorandum, App. B, Ex. 5.

5. *Id.* at 5.

6. *Id.* at 3.

7. *See id.* at 5.

8. *See id.* at 4:

 So long as Arthur Young has full responsibility ... for the conduct of the lawsuit ..., Wall Industries agrees to cooperate with Arthur Young to the maximum extent possible so that Wall Industries may secure recovery on the 1977 claim for refund. If Arthur Young does not have full responsibility [*i.e.,* an issue unrelated to the 1977 refund claim is raised], then Wall Industries shall cooperate to the extent such cooperation is not in conflict with its decisions as to matter not relating to the issue of whether the 1977 claim for refund was timely and properly made. Such cooperation shall include, *but shall not be limited to,* instituting a lawsuit in the name of Wall Industries against the United States of America and diligently prosecuting such lawsuit until final adjudication, including appeals, or until settlement with consent of Arthur Young. (emphasis added).

9. 28 U.S.C. § 2412(d)(1)(A):

 A court shall award to a *prevailing party* other than the United States fees and other expenses ... *incurred by that party* ... unless the court finds that the position of the United States was *substantially justified* or that *special circumstances* make an award unjust. (emphasis added).

unjust. Third, with respect to the fact that allegedly it did not incur legal fees in an attorney-client relationship, Wall argues—that it need not directly "incur" attorney fees; that its ultimate liability for attorney fees is not extinguished; and that inasmuch as Arthur Young did nothing more than "act in the capacity of 'an insurer who has undertaken by contract to provide defense services'" it is entitled to attorney fees pursuant to the EAJA. Moreover, argues Wall, such entitled fees should not be limited to the statutory maximum of $75 per hour, since plaintiff's counsel possessed experience, ability, and reputation sufficient to deserve *more* than $75 per hour.[10] Plaintiff also avers that "an increase in the cost of living since the Act was passed" is further justification for this court to relax the statutory maximum.

Defendant:

In its opposition reply to Wall's application for attorney fees, the defendant argues that its position on the jurisdictional issues was indeed "substantially justified."[11] With respect to Wall's "formal" claim theory, the defendant maintains that no additional attorney fees were expended as a result of Wall having to argue this issue because the defendant stipulated that Wall was entitled to a refund of $93,846 under this legal theory. Furthermore, defendant avers, because its argument was successful to the extent that the *formal* claim was *not* timely filed with respect to the remaining $245,887 of the total claim, it cannot be said to have taken a position that was not "substantially justified."

Regarding the *informal* claim, the defendant points out that such issue—whether the existence of an informal claim was in fact established—is extremely fact intensive and must, as a consequence, be made on a case-by-case basis. Therefore, defendant says, its argument that Wall failed to establish an *informal* claim cannot be said not to have been substantially justified, for *no* two cases involve a precisely identical set of surrounding facts and circumstances. In addition, defendant contends that its position, that the court could not recognize Wall's informal claim in light of defendant's request that a formal claim be filed, was also based on circumstances peculiar to this case, and that case precedent had never refuted such an argument based on such circumstances.

As to defendant's argument that the Anti–Assignment Act, 31 U.S.C. § 3727, precluded Wall from maintaining the action, defendant analogizes its position to that taken by the United States Supreme Court in *United States v. Shannon,* 342 U.S. 288, 72 S.Ct. 281, 96 L.Ed. 321 (1952), holding that an assignee could not bring suit against the United States and the assignor, co-defendants. Defendant raised this identical argument in the original case. *See Wall Industries,* 10 Cl.Ct. at 95, 106.

The defendant also puts forth the theory that because the eligibility language of the EAJA, 28 U.S.C. § 2412(d)(1)(A), specifically states that "a court shall award to a prevailing party ... fees and other expenses ... *incurred* by *that* party (emphasis added)," Wall is *not* eligible for an award under such statutory provision in that Arthur Young, and not Wall, "incurred" the cost of counsel in this refund litigation. Defendant, in urging this court to construe the language of § 2412(d)(1)(A) narrowly, distinguishes this case from cases awarding fees under the EAJA to pro bono attorneys who did not charge their clients any fee whatsoever on policy grounds. Justification for this position, says defendant, is that *any* award of attorney fees here would go to Arthur Young, thus, the principles underlying the EAJA would be violated if plaintiff prevails on these facts.

Lastly, assuming the court finds that the government was *not* substantially justified in its defenses, the defendant claims that the fees requested by Wall must be re-

---

**10.** 28 U.S.C. § 2412(d)(2)(A):

Attorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

**11.** *See supra* note 7.

duced. As support, the government points to the $75 maximum rate imposed by § 2412(d)(2)(A), and also argues that the attorney's billing report, supplied by Wall, does not adequately specify which services were spent on any given portion of the claim.

*Scope of the Court's Opinion*

This court must, therefore, first decide— whether Wall, a nominal applicant, is eligible to recover legal fees and expenses where said costs were not "incurred by *that* party" as required by § 2412(d)(1)(A) (emphasis added). In addition, we will address—whether Arthur Young, as the real party in interest, *must* meet the eligibility requirements of §§ 2412(d)(1)(A) and (d)(2)(B) of the EAJA in order for the applicant to recover.

*Discussion*

A. Introduction

The EAJA, 28 U.S.C. § 2412, was enacted by Congress in order to eliminate economic deterrents to justice, stemming from unreasonable governmental action often faced by parties, by allowing them to recover the cost of their legal fees for successful suits against the government. *See* H.R.Rep. No. 1418, 96th Cong., 2d Sess. 5–6, *reprinted in* 1980 U.S.Code Cong. & Admin.News 4953, 4984. The House Committee on the Judiciary speaks as follows of the disparity in resources between the government and certain individuals, partnerships, and corporations, and of how this disparity often results in the government taking advantage of small businesses:

> While the influence of the bureaucracy over all aspects of life has increased, the ability of *most citizens* to contest any unreasonable exercise of authority has decreased. Thus, at the present time, the government with its greater resources and expertise can in effect coerce compliance with its position. Where compliance is coerced, precedent may be established on the basis of an

uncontested order rather than the thoughtful presentation and consideration of opposing views. In fact, there is evidence that *small businesses* are the target of agency action precisely because they do not have the resources to fully litigate the issue. This kind of truncated justice undermines the integrity of the decisionmaking process. (emphasis added).

H.R.Rep. No. 1418, 96th Cong., 2d Sess. 10, *reprinted in* 1980 U.S.Code Cong. & Admin.News 4953, 4988. The report goes on to state that allowing successful plaintiffs to recover attorney fees prevents parties from having to decide between acquiescing to unreasonable government orders and asserting their rights at the risk of financial hardship. *Id.* at 12, U.S.Code Cong. & Admin.News at 4991.

In order for an applicant to be entitled to recover legal expenses under the EAJA, it must show that it has satisfied *each* of the following threshold eligibility requirements:

(i) it must have been the "prevailing party" in the original action;

(ii) it must have "incurred" the cost of legal fees in that action;

(iii) it must have a net worth of $7,000,-000 or less if a business or organization, or a net worth of $2,000,000 if an individual; *and* [12]

(iv) if it is a business or organization, it must employ 500 or less persons.

*See* §§ 2412(d)(1)(A) and (d)(2)(B). Upon satisfying each of the foregoing elements, an applicant would thereby be entitled to recover such fees unless the government can then show that its legal positions in the original case were either "substantially justified," *i.e.*, were reasonable, or that special circumstances exist that would make an award unjust. *See id.*

Given the multiple issues raised herein which may bar recovery, we will address each seriatim. First, we address the eligi-

---

**12.** A 1985 amendment to the EAJA raised the net worth eligibility limit from $5,000,000 for a business and $1,000,000 for an individual, to $7,000,000 and $2,000,000, respectively. That amendment also made clear the intent of Con-

gress that *both* the net worth limit and the number of employees limit had to be satisfied by the applicant. Pub.L. No. 99–80, § 2(c)(1) (1985) (codified as amended at 28 U.S.C. § 2412(d)(2)(B)).

bility requirements that Wall must meet in order to recover an award under the EAJA.

### B. Eligibility of Wall Industries

 Wall is not eligible under the EAJA because it failed to *incur* any legal expenses in this action. By the terms of the settlement agreement between Wall and Arthur Young, *supra*, it was Arthur Young who, as a condition for the payment of $291,045 to Wall, required Wall to initiate the action, it was Arthur Young who selected the attorneys to prosecute the refund claim, and it was Arthur Young who controlled the tactics and strategies used in the litigation.[13] Thus, no credible evidence was proffered establishing that Wall assumed any responsibility to pay for the legal fees and other expenses incurred in the refund litigation.

Plaintiff strenuously argues, and this court fully recognizes, that courts have in the past awarded the fees and expenses under the EAJA to plaintiffs who have *not* been charged any fees (*i.e.*, in pro bono cases) at all by their attorneys. Plaintiff goes on to conclude that this court, by holding that Wall is ineligible under the EAJA, simply because it did not literally "incur" any fees, would be reading § 2412(d)(1)(A) too narrowly. We disagree because we find a significant distinguishing fact between the case at bar and those cited to by plaintiff, *infra*. Moreover, even absent such distinction, we are not compelled to follow those cases and decline to do so.

In both *Hornal v. Schweiker*, 551 F.Supp. 612 (M.D.Tenn.1982), and *Campana v. Muir*, 786 F.2d 188 (3d Cir.1986), cited to by plaintiff, the court held that a plaintiff who had been represented *without charge* could, nevertheless, recover attorney fees under the EAJA, 28 U.S.C. § 2412, for the purpose of paying the attorney. Those cases were based on the following language in the House Report:

> In general, consistent with the above limitations, the computation of attorney's fees should be based on prevailing market rates *without reference to the fee arrangements between the attorney and client.* The fact that attorneys may be providing services at salaries or hourly rates below the standard commercial rates which attorneys might normally receive for services rendered is not relevant to the computation of compensation under the [EAJA]. In short, the award of fees is to be determined according to general professional standards.

H.R.Rep. No. 1418, 96th Cong., 2d Sess. 15 (1980), *reprinted in* 1980 U.S.Code Cong. & Admin.News 4953, 4994, *cited in Hornal,* 551 F.Supp. at 615–16 (emphasis added).

That case stands for the proposition that where attorneys charge less than the $75 hourly rate, then EAJA entitles the prevailing party to the maximum of $75 per hour. That is to say, if the *charge* is $35 or $45 or $0 per hour, all other factors met, the prevailing party is entitled to $75 per hour.

The court observes that neither the House, the Senate, nor the House Conference Report define the term "incurred" by the prevailing party. Moreover, there is no indication whether Congress contemplated the award of fees and expenses to prevailing parties represented by pro bono, *i.e.*, public interest, lawyers. Webster's New Collegiate Dictionary defines "incurred" to mean "to become liable or subject to; bring down upon oneself." We note in this regard that neither Wall nor Arthur Young submitted an affidavit as to whom Miller & Chevalier invoiced for legal fees, nor did they submit copies of any cancelled checks evidencing who paid said legal fees. Such evidence, of course, would have been circumstantially probative on the issue of incurrence. Against this background, it strains credulity to find that fees and expenses were "incurred" by Wall as contemplated by the EAJA.

In the case at bar, the representation was not pro bono; moreover, arrangement as to which party will pay the fees did not involve *the attorney and Wall,* but rather, Wall and its accounting firm, Arthur Young. As such, this fee arrangement

---

**13.** *See supra* note 4 at 8–9.

cannot be similarly characterized as one "between the attorney and client," as stated in the House Report. *Id.* Indeed, the attorney in this case was paid at least the prevailing market rate ($75 per hour), and therefore the language of House Report 1418, relied upon by the courts in the cases cited by the plaintiff, is not applicable. The critical fact in the case at bar is that Wall, the prevailing party, did not "become subject to [the payment of legal fees]," but rather it was Arthur Young. We note that the United States Court of Appeals for the District of Columbia Circuit in *Unification Church v. I.N.S.* faced an argument similar to that made by plaintiff here, and also held that because the fee arrangement was between two clients, and did not involve the attorney, the language in House Report 1418 was not applicable. *See* 762 F.2d 1077, 1083 (D.C.Cir.1985).

The cases cited to by the plaintiff that support a liberal interpretation of the requirement of § 2412(d)(1)(A), that a party must have "incurred" attorney fees, rely on a House Report that addresses *computation* of fees, *e.g.,* shall the fee be $35 or $75 per hour, not the question of the *obligation* to pay or the failure to establish that they were "incurred by that party." The word "incurred" in the context of § 2412(d)(1)(A) obviously is a significant eligibility element. Plaintiff urges that this court practically ignore its literal meaning. To do so, we believe, would defeat the purpose of the EAJA to benefit *only* the prevailing party who actually absorbed the financial burden of the litigation. To rule otherwise would visit a benefit on a person not otherwise contemplated by the EAJA. We conclude, therefore, that because Wall has failed to satisfy § 2412(d)(1)(A), in that the fees were not "incurred," it does not meet said eligibility requirement. If Wall fails to meet one of the indispensable eligibility EAJA requirements, the question then is—whether there is any other basis upon which it can qualify.

**14.** *See supra* note 1.

**15.** Fed.R.Civ.P. 17(a) states in pertinent part: "Every action shall be prosecuted in the name

## C. Real Party In Interest (Eligibility Requirements)

■ Assuming, without deciding, that Arthur Young, as the real party in interest in this litigation, *must* meet the eligibility requirements of the EAJA, as held in a somewhat similar case in *Unification Church, supra,* Wall still would not be entitled to recover any fees since Arthur Young has an admitted net worth in excess of $7,000,000 and employs more than 500 persons.[14] Although the Anti–Assignment Act, 31 U.S.C. § 3727 prevents an assignee of a claim against the United States from bringing the suit even though that assignee may be the real party in interest, the assignor of the claim may represent the assignee/real party in interest in such a suit. *See Naartex Consulting Corp. v. Watt,* 722 F.2d 779, 794 (D.C.Cir.1983). As to the hypothesis that, at bar, Wall is in effect representing the real party in interest, *i.e.,* Arthur Young, the initial question to be addressed is whether Arthur Young is actually the real party in interest. The term "real party in interest" is often defined within the context of Fed.R.Civ.P. 17(a) [15] as the party that possesses the substantive right under which suit is brought. The D.C. Circuit has used said term within the context of the EAJA to mean the sole beneficiary of an award of fees. *See Unification Church,* 762 F.2d at 1082.

*Unification Church* involved an appeal from a federal district court's denial of attorney fees under the EAJA. 762 F.2d at 1077. The original plaintiffs, a church and three of its members, had successfully overturned in the district court an Immigration & Naturalization Service's refusal to allow the three individual church members to remain in the United States under the employ of the church. *See id.* at 1079. The fee arrangement between the appellants (the three individual church members) and their counsel was such that the church was solely responsible for payment to their counsel for legal services. Whether or not

of the real party in interest." *See also* RUSCC 17(a).

the appellants' application for attorney fees under the EAJA was granted, the *appellants would not* have been liable for the payment of such fees. *See id.* at 1082. Thus, the operative question pending was whether the *INS* (government) or the *church* would pay the attorney fees. Concluding that the church is the beneficiary of any award of fees, the D.C. Circuit used this factor as the basis of its conclusion that the church, and not the appellants, was the real party in interest. *See id.* Therefore, held the court, it was the church, in its capacity as the real party in interest, that had to meet the eligibility requirements of § 2412(d)(2)(B). Because the church employed over 500 persons, it was there ineligible, and the court affirmed the district court's denial of attorney fees. *See id.*[16]

In a similar case out of the Sixth Circuit, the district court also applied the doctrine of real party in interest to determine which party was required to meet the § 2412(d)(2)(B) eligibility requirements. *United States v. Lakeshore Terminal and Pipeline Co.*, 639 F.Supp. 958 (E.D.Mich. 1986), involved an application for attorney fees under the EAJA by Lakeshore Terminal and Pipeline Co. (Lakeshore), which had successfully defended itself against an action by the United States for a declaratory judgment forcing Lakeshore to convey title to one of its fuel storage facilities. Lakeshore was a wholly-owned subsidiary of the Detroit & Mackinac Railway Co. (D & M Railway). Although D & M Railway did not hold title to the storage facility in question, was never a party to any such contract with the government, and although the action was brought by the United States against Lakeshore and not D & M Railway, the court found that D & M Railway was the real party in interest. *See id.*

at 962. The court based its conclusions on a "totality of the facts" test, and clearly stated that the most significant factor it considered was D & M Railway's "active involvement" in the litigation. *See id.* Realizing that it was D & M Railway's interest at stake in the law suit, and that it was D & M Railway's attorney who initially responded to the government's notice of its intention to exercise its option to purchase the facility, the court held that D & M Railway, and not Lakeshore, even though D & M Railway was not a party to the suit, had to meet the eligibility requirements of § 2412(d)(2)(B) of the EAJA. *See id.* at 962–63.

In the case at bar, Arthur Young is both the sole beneficiary of this application and unquestionably was actively involved in this litigation. A thorough analysis of the settlement agreement between Arthur Young and Wall[17] discloses that there is no question that Arthur Young, in actuality, required Wall to initiate this suit as a condition of the payment of $291,045, and that Wall is little more than a nominal applicant. The agreement clearly states that all proceeds, including interest, attorney fees, and expenses that Wall receives from the United States in connection with the 1977 refund claim are to be paid to Arthur Young.[18] In addition, Arthur Young was to select legal counsel and pay for legal services to the extent that the suit, which Wall was obligated under this agreement to bring under its own name, involved the question of the 1977 refund claim.[19] As to the responsibilities of the parties during the course of the litigation under their agreement, Arthur Young had full authority to control the conduct of the parties, to choose legal strategies, to decide whether or not to appeal, and to accept or decline all settlement offers.[20]

---

16. In explaining the rationale for its denial, the court stated that "[i]f we were to award fees in this case [vicariously through the church] ... we would open the door for the wholesale subversion of Congress's intent to prevent large entities from receiving fees under subsection (d).... We cannot, consistent with our duty to implement the will of Congress, allow such a situation." *Unification Church,* 762 F.2d at 1082.

17. *See supra* note 4.

18. *See id.* at 3–4.

19. *See id.* at 5.

20. *See supra* note 6.

The language of the agreement did purport to give Wall authority to "assert sole control over the entire contest" once a matter other than that of the timely and proper filing of the 1977 refund claim was raised,[21] and plaintiff argues that this provision "came into play" upon the government's assertion of its Anti–Assignment Act defense. We reject this argument, first, because it does not address Arthur Young's role as the sole beneficiary of all proceeds. As Arthur Young stood to collect the entire judgment,[22] whatever new issues were raised, Wall, as its representative, was obviously compelled to strenuously refute any defense of the government that, if accepted by the court, would have resulted in an adverse judgment. Moreover, as this court again states, it is the extent of a person's *active involvement* in the *present* litigation that is relevant to the determination of whether it is a real party in interest under the EAJA. The provision of the agreement cited by plaintiff simply purports to grant *the right* to assert control over this case to Wall;[23] it does not actually *grant* sole control to Wall. The fact remains that Arthur Young actively and continuously participated in the present litigation and stood alone to benefit.

In any event, this alleged authority of Wall is so wrought with qualifications that it cannot seriously be understood to give Wall "the right to assert sole control over the entire contest...." Pertinent thereto, we quote the language of the agreement directly following the foregoing provision:

> [P]rovided that it shall consult with Arthur Young regarding and consider in good faith such requests as Arthur Young shall make as to the conduct of such contest, to the extent not in conflict with any of Wall Industries tactics, strategies or decisions with respect to claims not relating solely to the timely and proper filing of the 1977 Claim For Refund; *provided* further that Wall Industries shall (to the extent permitted by law) allow Arthur Young to participate in any such contest by submitting briefs or memorandum in the name of Arthur Young respecting solely the issue as to whether the 1977 Claim For Refund was properly and timely filed; *provided* further, that Wall Industries agrees not to settle the issue relating to the timely filing of the 1977 refund claim without the concurrence of Arthur Young which concurrence shall not be unreasonably withheld.

(emphasis added). *See supra* note 4 at 5. We believe that this esoterical language makes it clear that under no circumstances was Wall to have "the right to assert sole control over the entire contest" to the complete exclusion of Arthur Young. It is unquestioned that Arthur Young retained the power to make requests, which Wall Industries was obligated to consider in good faith, submit briefs and memoranda in its own name, and to reject any settlement offer made by the United States.[24] Simply stated, Arthur Young undeniably maintained an active involvement and a controlling influence over the entire litigation of this case.

It was Arthur Young who received the proceeds from the judgment, and Arthur Young who stands to receive any and all attorney fees. As Wall was obligated to Arthur Young to initiate this action in its own name, to allow Arthur Young to determine the litigation strategy to be used, to pay to Arthur Young the entire award of judgment (less any debts Arthur Young might owe to Wall), and as Wall never assumed any responsibility to pay for legal services and would derive no benefit from an award herein, this court finds that Ar-

---

**21.** *See id.* at 5.

**22.** This court recognizes that Wall Industries did in fact retain under its settlement agreement with Arthur Young a right to withhold, and apply as an offset, an amount equal to any outstanding debt of Arthur Young owing to Wall. *See id.* at 3–4. As Arthur Young would otherwise eventually have to pay to Wall such an amount, and Wall receives nothing more than what it is rightfully entitled, it remains true that Arthur Young will acquire the "entire judgment."

**23.** *See id.* at 5.

**24.** *See supra* note 6.

thur Young is clearly the real party in interest under the EAJA.

Consistent with the persuasive reasoning of the D.C. Circuit and the District Court of the Eastern District of Michigan, *supra,* Arthur Young, as the real party in interest, must, as a consequence, satisfy the eligibility requirements of the EAJA. Even under such an alternative analysis, however, Wall is nevertheless ineligible to recover under the EAJA for the reason that Arthur Young also fails to satisfy the eligibility requirements of § 2412(d)(2)(B).[25] This is so because, admittedly, Arthur Young, at the time the petition was filed, had a net worth in excess of $7,000,000 and employed more than 500 persons.

*Conclusion*

Wall Industries is ineligible under the EAJA § 2412(d)(1)(A) because it neither "incurred" any fees nor assumed any liability for such fees. Arthur Young is ineligible under the EAJA § 2412(d)(2)(B) because it has a net worth in excess of $7,000,000 and employs more than 500 persons. Wherefore, since this case presents a situation in which both the applicant and the real party in interest are ineligible to recover under the EAJA, the application is denied, and the Clerk shall dismiss same.

IT IS SO ORDERED.

---

**25.** Because neither Wall nor Arthur Young meet the eligibility requirements of the EAJA, we need not rule on the question of whether the government's position in the case on the merits was substantially justified, *i.e.,* reasonable. *See Pierce v. Underwood,* —— U.S. ——, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988).