**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2371
_____

ESTATE OF ANTONIO J. PALUMBO DECEASED
PNC BANK, NATIONAL ASSOCIATION, EXECUTOR,
Appellant

v.

UNITED STATES OF AMERICA

_____

On Appeal from the United States District Court
for the District of Western Pennsylvania
(D.C. No. 2-10-cv-00760)
District Judge: Honorable Arthur J. Schwab

_____

Argued on March 6, 2012

Before: SCIRICA, and AMBRO and VAN ANTWERPEN,
Circuit Judges

(Filed: April 2, 2012)

Louis A. Prosperi, Esq. [**ARGUED**]
Law Office of Louis A. Prosperi
1910 Cochran Road
Manor Oak Two, Suite 730
Pittsburgh, Pennsylvania 15220

Steven L. Sablowsky, Esq.
Goldblum & Sablowsky LLC
285 East Waterfront Drive
Suite 160
Homestead, Pennsylvania 15120

John P. Iurlano, Esq.
500 McKnight Park Drive
Suite 501B
Pittsburgh, Pennsylvania 15237
            *Counsel for Estate*

Tamara W. Ashford, Esq.
Jonathan S. Cohen, Esq.
Randolph L. Hutter, Esq. [**ARGUED**]
United States Department of Justice Tax Division
950 Pennsylvania Avenue, N.W.
P.O. Box 502
Washington, District of Columbia 20044

Christopher Williamson, Esq.
United States Department of Justice Tax Division
P.O. Box 227
Ben Franklin Station
Washington, District of Columbia 20044
            *Counsel for Government*

———

OPINION OF THE COURT

———

VAN ANTWERPEN, Circuit Judge.

The Estate of Antonio J. Palumbo ("the Estate") prevailed in its suit against the United States when the District Court ruled it was entitled to a tax refund. The Estate then sought recovery of all of its attorneys' fees and costs under 26 U.S.C. § 7430, and alternatively the fees and costs it incurred after December 16, 2010 under the theory that the government rejected its qualified offer made pursuant to § 7430(g). Finding the position of the United States to be substantially justified, the District Court denied the Estate its fees and costs. On appeal, the Estate argues that the position of the United States was not substantially justified and that the net worth requirements of § 7430 did not prevent it from recovering its fees and costs. We will affirm.

## I.    **Factual and Procedural History**

### A. Creation of the Charitable Trust and Will Contest

In 1974, Antonio Palumbo created the A.J. and Sigismunda Palumbo Charitable Trust (the "Charitable Trust"). Palumbo died in 2002. During his life, he executed various wills and trust instruments; his last will was executed on July 6, 1999 (the "1999 will"). The parties agree there was no express residuary provision in the 1999 will, despite the fact that each of Palumbo's previous wills devised the

3

residue to the Charitable Trust. Palumbo's attorney admitted that this omission was a scrivener's error.

The lack of a residuary clause led to a dispute over who was entitled to the residue. Palumbo's son claimed he, as Palumbo's sole intestate heir, was entitled to the residue, while the Charitable Trust claimed it was entitled to the residue because of the scrivener's error. The two sides reached a settlement wherein Palumbo's son received $5,600,000 along with real property in Wheeling, West Virginia, and the Charitable Trust received $11,721,141.[1] The settlement agreement was approved by an order of the Orphans' Court Division of the Court of Common Pleas of Elk County, Pennsylvania.

## B. Federal Estate Tax Refund and Fees and Costs Under § 7430

After the settlement, the Estate filed a claim for a federal estate tax charitable deduction in the amount payable to the Charitable Trust. The Commissioner of Internal Revenue disallowed the charitable deduction, finding that the charitable contribution was made by Palumbo's son via a settlement agreement, not by Palumbo through his 1999 will. The Estate thereupon brought an action against the United States District Court for the Western District of Pennsylvania seeking a refund of the federal estate tax paid on the $11,721,141 that was donated to the Charitable Trust. The District Court granted the Estate's motion for summary

---

[1] The amount Palumbo's son received was free of all administrative expenses, debts, and estate and inheritance taxes.

4

judgment; the Estate then sought its attorneys' fees and costs under 26 U.S.C. § 7430 ("§ 7430") both as a "prevailing party," which would entitle it to full recovery, and as a party who made a qualified offer pursuant to § 7430(g), which would entitle it to fees incurred after December 16, 2010.

Because the District Court found the government's position in the litigation to be substantially justified, it did not award the Estate fees or costs. The District Court did not address the net worth requirements imposed by § 7430, whether those requirements should apply to the Estate or the Charitable Trust, or the validity of the Estate's alternative claim that it was entitled to certain costs because it made a qualified offer under 26 U.S.C. § 7430(g). The Estate filed a timely notice of appeal.

## II. Jurisdiction and Standard of Review

We have jurisdiction over the final order of the District Court under 28 U.S.C. § 1291. We review the District Court's decision that the government's position was substantially justified for abuse of discretion. *Nicholson v. Commissioner*, 60 F.3d 1020, 1026 (3d Cir. 1995); *see also Pierce v. Underwood*, 487 U.S. 552, 559 (1988). A district court's ruling can only be reversed under abuse of discretion review if its decision was arbitrary, irrational, fanciful, clearly unreasonable, or based on a "clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." *United States v. Lee*, 612 F.3d 170, 184 (3d Cir. 2010). We will not upset a district court's exercise of discretion "'unless no reasonable person would adopt the district court's view.'" *United States v. Starnes*, 583 F.3d

5

196, 214 (3d Cir. 2009) (quoting *Ansell v. Green Acres Contracting Co.*, 347 F.3d 515, 519 (3d Cir. 2003)).

### III. Analysis

#### A. Fee Provision Statute

In court proceedings "brought by or against the United States in connection with the determination, collection, or refund of any tax," a "prevailing party" may recover fees and costs incurred in the litigation. 26 U.S.C. § 7430(a). "Prevailing party" is defined in § 7430(c)(4):

> (A) In general.--The term "prevailing party" means any party in any proceeding to which subsection (a) applies (other than the United States or any creditor of the taxpayer involved) --
>
> (i) which--
>
> (I) has substantially prevailed with respect to the amount in controversy, or
>
> (II) has substantially prevailed with respect to the most significant issue or set of issues presented, and
>
> (ii) which meets the requirements of the 1st sentence of section 2412(d)(1)(B) of Title 28, United States Code (as in effect on October 22, 1986) except to the extent differing procedures are established by rule of court and meets the

6

requirements of section 2412(d)(2)(B) of such Title 28 (as so in effect).

In referencing 28 U.S.C. § 2412(d)(1)(B), the statute incorporates the net worth restrictions set forth in the Equal Access to Justice Act ("EAJA").[2] Under the EAJA, the recovery of fees and costs is barred if a party's net worth exceeds the statutory amount. Moreover, the party seeking fees has the burden of proving that it meets the net worth requirements under § 7430. Tax Ct. R. 232(e); *Estate of Woll v. Commissioner*, 44 F.3d 464, 470 (7th Cir. 1994).

Congress included a special rule in § 7430 that applied the net worth requirement to estates. Section 7430(c)(4)(D) states that the $2,000,000 net worth requirement imposed on individuals in 28 U.S.C. § 2412(d)(2)(B)(i) shall apply to "an estate but shall be determined as of the date of the decedent's death." The rule appears to codify *Estate of Hubberd v. Comm'r*, 99 T.C. 335 (1992).[3] At the time *Hubberd* was decided, § 7430 did not contain a special rule subjecting an estate to the $2,000,000 net worth requirement. The *Hubberd* court decided that an estate was subject to the net worth requirement set forth in § 2412. *Id*. at 341. The court rejected the estate's argument that when applying the net worth requirement a court should "consider the net worth of the [estate's] beneficiaries, not the net worth of the estate." *Id*. at 339. The court explained its reasoning as follows:

---

[2] The EAJA is codified at 5 U.S.C. § 504 and 28 U.S.C. § 2412.
[3] The rule was added to § 7430 via the Taxpayer Relief Act of 1997, Pub. L. No. 105-34, 111 Stat 788.

7

[The Commissioner] determined a deficiency against the estate. This case is brought in the name of and on behalf of the estate by its executor. This action is for a redetermination of the estate tax deficiency. An estate is generally responsible for bearing the costs of its own litigation. It follows that we look to the net worth of the estate, and not of the beneficiaries or the executor.

*Id*. at 340–41 (citations omitted).[4]

Unlike estates, charitable organizations exempt from taxation under Section 501(c)(3) of the Internal Revenue Code need not satisfy any net worth requirement to recover fees and costs. Such an organization, however, cannot recover fees and costs if it had "more than 500 employees at the time the civil action was filed." 26 U.S.C. § 2412(d)(2)(B)(ii).

The appellant cites legislative history in the form of the Conference Report to the Tax Equity and Fiscal Responsibility Act of 1982, the bill that enacted § 7430. The applicable Senate Amendment, which was adopted by the Conference, stated "*Third-party costs*.—A taxpayer may recover costs for a third party incurred by that party on behalf of the taxpayer." H.R. Rep. No. 97-760, 97th Cong. 2d Sess. 687 (1982).

---

[4] The *Hubberd* court did not decide whether clause (i) or (ii) of § 2412(d)(1)(B) was applicable because the estate's net worth exceeded the limit stated in each provision.

8

Here, in addition to seeking fees and costs as a "prevailing party" under § 7430, the Estate seeks to recover under the qualified offer provision of § 7430(g). A qualified offer under § 7430(g): (1) is made by the taxpayer to the United States within the qualified offer period [which starts on the date that the first letter of proposed deficiency is sent to the taxpayer, and ends 30 days before the date the case is first set for trial]; (2) specifies the offered amount of the taxpayer's liability; (3) is designated at the time it is made as a qualified offer; and (4) remains open during the period beginning on the date it is made, and ending at the earliest of: the date the offer is rejected, the date of trial, or the ninetieth day after the offer is made. If the offer fails to meet the requirements, a party cannot receive litigation fees and costs. *McGowan v. Comm'r*, T.C. Memo 2005-80, 2005 WL 826928 at *2 (2005).

Parties seeking to recover under either the prevailing party provision or the qualified offer provision must satisfy the net worth requirements discussed above.[5] Because the

---

[5] Section 7430(c)(4)(B) states a "party shall not be treated as the prevailing party" if the position of the United States is "substantially justified." Courts look to published guidance (regulations, revenue rulings, etc) as well as the decisions of courts of appeal on substantially similar issues in making this determination. The "substantially justified" limitation does not apply to qualified offers. *See Swanson v. Comm'r*, 98 T.C.M. (CCH) 42 (2009) ("The qualified offer provision of section 7430(c)(4)(E)(i) applies without regard to whether the Commissioner's position in the matter is substantially justified."). This ground will not be discussed in this opinion and does not affect our resolution of the case.

resolution of the net worth issue disposes of both issues, we will resolve this case on that ground despite the fact that the District Court did not address it. *See Blum v. Bacon*, 457 U.S. 132, 138 n.2 (1982) ("It is well accepted . . . an appellee may rely upon any matter appearing in the record in support of the judgment below.").

## B. Application of § 7430 Requirements

It is undisputed that the Estate's net worth at the time of the decedent's death was greater than $2,000,000, and that, as a result, the Estate cannot qualify for fees and costs under either of its claims. The Charitable Trust, however, satisfies the net worth requirements because it is a tax-exempt charitable organization with fewer than 500 employees. The Estate has thus argued that the Charitable Trust is the real party in interest and that the Charitable Trust, not the Estate, qualifies as a prevailing party who incurred fees.

The crux of the Estate's argument is that because the Charitable Trust was the sole residuary beneficiary under the settlement agreement, it bore all the expenses incurred to obtain the tax refund, reaped all the benefits of the tax refund, and will reap the benefit of any attorneys' fees and costs recovered. In support of its argument, the Estate cites a number of cases that looked beyond the named plaintiff and aimed to determine whether "the real party in interest" could be awarded fees, *see, e.g.*, *Young v. Commissioner*, T.C. Memo. 2006-189, 2006 WL 2564109 (2006), as well as legislative history, *see* H.R. Rep. No. 97-760, 97th Cong. 2d Sess. 687 (1982). The Estate asserts that these arguments show the Charitable Trust was the "prevailing party" for the purposes of fee recovery under § 7430. We disagree. The

10

fact that the Charitable Trust stood to benefit from the Estate obtaining a tax refund, as well as any award of fees, does not mean that it was a "prevailing party" that incurred fees as is required under § 7430.

If the terms of a statute are unambiguous, the plain meaning of the statute will govern. *See Reves v. Ernst & Young*, 507 U.S. 170, 177 (1993) ("If the statutory language is unambiguous, in the absence of a clearly expressed legislative intent to the contrary, that language must ordinarily be regarded as conclusive." (citations omitted)); *Rubin v. United States*, 499 U.S. 424, 430 (1981) ("When we find the terms of a statute unambiguous, judicial inquiry is complete, except in rare and exceptional circumstances." (citations omitted)).

The definition section of § 7430 sets forth the criteria for determining a prevailing party. First, an individual or entity must be a "party in any proceeding" covered by § 7430(a). *See* § 7430(a) (stating it applies to "any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax"). Second, the party must "substantially prevail[] with respect to the amount in controversy" or "substantially prevail[] with respect to the most significant issue or set of issues presented." § 7430 (c)(4)(A)(i)(I) & (II). Finally, as previously mentioned, the definition of prevailing party excludes any party that fails to satisfy the net worth requirements of § 2412(d)(1)(B). § 7430(c)(4)(A)(ii).

In this case the Estate was the party in the underlying proceeding. The executor of the Estate was (1) responsible

for paying the appropriate amount of federal estate tax, *see* 26 U.S.C. § 2002 ("The tax imposed by this chapter shall be paid by the executor."); (2) the party with the legal right to seek a refund of taxes paid; and (3) the party that conducted the litigation. The settlement agreement between the Charitable Trust and Palumbo's son explicitly states that the "residuary estate will be solely responsible for the payment of all inheritance and estate taxes payable as a result of the Decedent's death." App. II at 87 ¶ 6. Further, the Estate was the only party to the proceedings, and it was the only party that prevailed in connection with the proceedings.

In addition to satisfying the prevailing party requirements, a party seeking fees under § 7430 must incur the litigation expenses attendant to that proceeding. Section 7430(c)(1)(B)(iii) states only reasonable fees "paid or incurred" for the services of an attorney are reimbursable. In order to recover fees under § 7430 a prevailing party must actually incur the costs. *Marre v. United States*, 38 F.3d 823, 829 (5th Cir. 1994) (litigant "entitled only to the amount owed under the contingency fee agreement plus costs"); *Young*, 2006 WL 2564109 at *9 (T.C. 2006) ("Unlike certain other fee-shifting statutes, section 7430 generally allows the recovery of attorney fees only to the extent such amounts have been paid or incurred." [6]). Unlike the term "prevailing party," "incur" is not defined by § 7430 so we must assume

---

[6] We note that we are not dealing with the situation where a non-party has advanced the funds to pay the fees and the plaintiff is either liable to repay them, or that repayment is contingent upon recovery. *See Morrison v. Comm'r*, 565 F.3d 658, 662 (9th Cir. 2009); *SEC v. Comserv. Corp.*, 908 F.2d 1407, 1414 (8th Cir. 1990).

the legislature intended the ordinary meaning of the word to apply. *Smith v. United States*, 508 U.S. 223, 228 (1993) ("When a word is not defined by statute, we normally construe it in accord with its ordinary or natural meaning."). *Black's Law Dictionary* defines "incur" as "to suffer or bring on oneself (a liability or expense)." *Black's Law Dictionary* at 836 (9th ed. 2009).

This definition is consistent with the Tax Court's statement "[f]or purposes of section 7430, fees are 'incurred' when there is a legal obligation to pay them." *Young*, 2006 WL 2564109 at *9. Here, the Estate "suffered or brought on" itself the fees it had the legal obligation to pay. The Estate paid the attorneys' fees and expenses and was the party in the underlying litigation represented by those attorneys. It is thus clear that the Estate was the prevailing party who incurred the expenses related to the litigation.

The Estate's argument that we should look at the sole residuary beneficiary, the Charitable Trust, cannot be reconciled with the plain language of the statute and the ordinary meaning of its terms, and therefore must be rejected. Since the Charitable Trust was not a party to the underlying suit, it cannot be a prevailing party nor can it incur expenses as contemplated by the statute.[7] The fact that it stands to

---

[7] The Charitable Trust did hire an attorney to work on the matter, and his expenses accounted for slightly less than 20% of the total amount sought by the Estate. We do not believe that the Charitable Trust's legal expenses are the type covered by § 7430. Section 7430 aims to ensure "that every citizen is able to defend himself against unjustified government action, free from the financial disincentives associated with

benefit from the Estate's victory, and that it hired an attorney to help in the litigation, cannot change the result that it does not qualify under § 7430.

By their nature, decedents' estates deal with resources that will be passed along to other individuals or entities. *See Black's Law Dictionary* at 629 (9th ed. 2009) (defining a decedent's estate as "The real and personal property that a person possesses at the time of death and that passes to the heirs or testamentary beneficiaries"). If an individual or entity is the residual beneficiary of an estate, that separate individual or entity will indirectly bear the estate's fees. Yet, § 7430 requires courts to analyze an estate's, not its beneficiary's, net worth, and courts must make such a determination "as of the date of the decedent's death." The mere existence of an indirect consequence on the residual beneficiary does not alter the application of the plain meaning of the statute.

The Conference Report cited by the Estate does not provide persuasive evidence that Congress intended a different result. Although the Senate Amendment, officially adopted by the Conference Report, stated "[a] taxpayer may recover costs for a third party incurred by that party on behalf of the taxpayer," a number of hurdles were inserted into § 7430. Taxpayers must clear those hurdles before recovering fees. To that end, we do not read the Senate Amendment in the Conference Report as negating, or casting aside, the

litigation." *Morrison*, 565 F.3d at 659. The Charitable Trust did not participate in such litigation to protect its rights; it merely hired counsel that advised it, and helped the Estate, in the Estate's participation in such litigation.

14

different barriers to recovery placed in § 7430. The taxpayer, here the Estate, must still qualify as a prevailing party under § 7430 before it can recover any costs for third parties that those parties incurred on its behalf.

The application of the statutory language to this case is clear: we are to look at the Estate's net worth since it was the taxpayer that pursued its substantive legal rights in the underlying action. *See also Hubberd*, 99 T.C. at 341 (examining estate's net worth because the estate must pay taxes, the case was brought in name of estate by executor, and estate is "generally responsible for bearing the costs of its own litigation"). The relevant point in time for determining the value of the estate is its value at the time of Palumbo's death. It is undisputed that the Estate's net worth exceeded $2,000,000. As a result, the Estate is not eligible to recover fees and costs under § 7430.

C. <u>Decisions Focusing on the "Real Party of Interest"</u>

The Estate's discussion of case law regarding the real-party-in-interest doctrine does not dissuade us from our conclusion. We now examine this case law and explain why we believe it does not dictate a different result.

One of the first decisions to apply the real-party-in-interest doctrine to the EAJA was *Unification Church v. I.N.S.*, 762 F.2d 1077 (D.C. Cir. 1985). The United States Court of Appeals for the District of Columbia Circuit held that courts should determine the real party in interest in the fee litigation and decide whether that party is eligible to recover fees. In the underlying litigation, the Unification

15

Church agreed to pay the attorneys' fees for three of its employees in their dealings with the Immigration and Naturalization Service, and joined the suit as a named plaintiff. *Id*. at 1082; *see also Unification Church v. I.N.S.*, 547 F. Supp. 623 (D.D.C. 1982). The employees and Church were successful, and the Church sought to recover, through the EAJA, the fees it paid on behalf of the employees. *Id.* at 1079. The court decided that the Church was the real party in interest because it had incurred all of the fees, and would be the beneficiary of any award of fees. *Id*. at 1082. Despite the fact each employee was individually eligible to recover, the Church was prevented from recovering because it had more than 500 employees.

The court explained that if it "were to award fees in this case on the basis that the individual appellants qualified under subsection (d)(2)(B)(i), [it] would open the door for the wholesale subversion of Congress's intent to prevent large entities from receiving fees under subsection (d)." *Id*. The D.C. Circuit feared that "[i]n a wide variety of circumstances, organizations obviously not qualified for an award under subsection (d) would be able to persuade individuals to be among the parties, and the organization would then receive free legal services if its side were to prevail." *Id*. The court could not "allow such a situation." *Id*. As a result the court held that "where the fee arrangement among the plaintiffs is such that only some of them will be liable for attorney's fees, the court shall consider only the qualification *vel non* under the [EAJA] of those parties that will be themselves liable for fees if court-awarded fees are denied." *Id*.

The Estate also argues the decision in *Wall Industries v. United States*, 15 Cl. Ct. 796 (1988), *aff'd in unpublished*

16

*opinion*, 883 F.2d 1027 (Fed. Cir. 1989), supports the extension of the real-party-in-interest doctrine. In that decision the court denied the taxpayer-plaintiff fees under the EAJA because it was not the real party in interest.

Wall Industries Inc. ("Wall"), the taxpayer and plaintiff in the action, filed suit seeking a tax refund. Wall, however, entered into an agreement with its accounting firm, Arthur Young ("Young"), whereby Young paid Wall $291,045 to settle a potential malpractice claim against Young for failing to file the refund claim. *Wall Indus.*, 15 Cl. Ct. at 799. As a condition of the settlement, Wall granted to Young full responsibility for litigating the tax refund claim and any refund proceeds resulting from that litigation. *Id.* Therefore, Young conducted the litigation, paid for the litigation, and would receive any and all benefit from the litigation. *Id.* The court stated "[a] thorough analysis of the settlement agreement between Young and Wall discloses that there is no question that Young, in actuality, required Wall to initiate this suit as a condition of the payment of $291,045, and that Wall is little more than a nominal applicant." *Id.* at 804.

After Wall prevailed and obtained a refund, it sought fees under the EAJA. The court found that Wall was not eligible for fees because it "never assumed any responsibility to pay for legal services and would derive no benefit from an award herein . . . ." *Id.* at 805. The court found that Young was the real party in interest because it, not Wall, "actively and continuously participated" in the litigation and "stood alone to benefit." *Id.* The court then analyzed whether Young, not Wall, could qualify under the net worth

17

provisions, and denied fees because of Young's net worth and size. *Id* at 806.

Here, the Estate argues that because, in its view, the Charitable Trust "actively and continuously participated" in the litigation and "stood alone to benefit," it must be considered the real party in interest, just like the Unification Church in *Unification Church*, and Young in *Wall Industries*. The Estate errs in relation to both cases.

In both *Unification Church* and *Wall Industries*, the real party in interest had a legal arrangement that made it responsible for the fees. *See also Love v. Reilly*, 924 F.2d 1492, 1494 (9th Cir. 1991) ("The members of the [association] would be the real party in interest in the fee litigation only if they were liable for the [association's] attorney's fees."). The Charitable Trust had no such arrangement that made it liable or responsible for the fees. The Estate argues that as the sole residuary beneficiary the Charitable Trust did ultimately bear the fees. The Charitable Trust, however, did not directly bear the costs of these fees in the manner that the Unification Church and Young did. The Unification Church and Young paid the costs directly out of their pocket, whereas the Estate paid the costs out of its pocket and the Charitable Trust will only indirectly bear the costs after it receives a smaller distribution. In fact, the Estate is in a more analogous position to Young and the Unification Church than the Charitable Trust because the Estate, like those organizations, directly paid the costs of litigation.

Other differences render *Unification Church* and *Wall Industries* legally distinguishable from the current matter. First, the Unification Church was an actual party to the

18

underlying suit, whereas the Charitable Trust was not. Second, Young contracted for any tax refund obtained and was thus legally entitled to it. By contrast, the tax refund obtained by the Estate will go to the Estate, and the Charitable Trust has no legal claim to it. The Charitable Trust will benefit after the Estate obtains that refund and passes it along in the proper manner, but that does not mean that the Charitable Trust possesses the legal right, as Young did, to the refund. But the essential difference is that neither of these cases authorized payment under the EAJA to entities that were not parties to the underlying suit. Courts have rejected assertions by non-parties that they were eligible for EAJA fees because they were the real parties in interest. *Sw. Marine, Inc. v. United States*, 43 F.3d 420, 422 (9th Cir. 1994); *S.E.C. v. Comserv Corp.*, 908 F.2d 1407, 1413 (8th Cir. 1990); *Am. Bayridge Corp. v. United States*, 24 C.I.T. 9, 10-12 (2000). For that reason, the real-party-in-interest doctrine, as applied to the EAJA, does not support the Estate's claim.

Though the above discussion explains why judicial interpretations of the real-party-in-interest doctrine pertaining to the EAJA do not militate in favor of the Estate's position, we must also discuss the cases, cited by the Estate, that apply the real-party-in-interest doctrine to § 7430. *See Young*, 2006 WL 2564109; *Dixon v. Comm'r*, 91 T.C.M. 1138, 2006 WL 1275497 (2006), *aff'd on other grounds*, 612 F.3d 890 (9th Cir. 2010). A careful analysis of these decisions reveals that they provide little support for, and run counter to, the Estate's position.

In *Young* and *Dixon*, the Tax Court addressed both test and nontest cases involving taxpayers who had invested in a

19

specific tax shelter. The analysis in these two decisions applies to a small portion of tax litigation cases and provides a narrow exception to an otherwise clear rule. Specifically, both *Young* and *Dixon* arise from the tax shelter programs promoted by Henry F.K. Kersting during the 1970's and 1980's. The shelters spawned more than 1,000 docketed cases after the Commissioner of Internal Revenue disallowed interest deductions claimed by participants in the shelters. *Young*, 2006 WL 2564109 at *1. Test cases proceeded, while nontest case petitioners entered into agreements whereby their cases would be resolved in accordance with the outcome of the test cases. *Id*. A "Defense Fund" was organized and "nontest case petitioners shared the further costs of the test case litigation." *Id*. at *2.

In *Young*, the Tax Court held "that the real parties in interest in th[e] litigation include not only the test case petitioners and participating nontest case petitioners, but also all other remaining nontest case petitioners." *Id*. at *8 (quoting *Dixon*, 2006 WL 1275497 at *9). The court stated "the fact that petitioners have not, by and large, paid or incurred the claimed fees and expenses does not render those amounts unrecoverable under section 7430." *Id*. at *10 (quoting *Dixon*, 2006 WL 1275497 at *9). As the court noted, "the relevant inquiry is . . . whether the real parties in interest who did pay or incur those amounts satisfy the net worth requirement" imposed by § 7430 and § 2412. *Id*. (quoting *Dixon*, 2006 WL 1275497 at *9).

Here, we are dealing with a factual situation very different from *Young* and *Dixon*. In those decisions many of the taxpayers had filed petitions in the Tax Court regarding related issues, and had done so because they had rights at

20

stake in the decisions. The petitioners in *Young* and *Dixon* had similar rights in the tax shelter; the resolution of one case, therefore, would determine the legal rights of many others. To that end over 300 nontest case petitioners had contributed to the Defense Fund.

Conversely, the resolution of the Estate's tax refund proceeding does not determine the Charitable Trust's rights in a similar proceeding; the Charitable Trust is not a nontest case petitioner waiting to learn how the courts will rule on its tax interests. While the nontest case petitioners had legal claims dependent on the resolution of the test cases' outcomes, the Charitable Trust has no legal claim of its own that is dependent on the outcome of the Estate's tax litigation. The fact that the Charitable Trust will suffer an indirect pecuniary consequence from the Estate's litigation does not elevate that consequence to an independent legal claim. The Charitable Trust is thus more akin to the spouse of one of the test case petitioners who stands to gain only through the resolution of another's legal rights, not the legal rights of its own.

In *Dixon*, the Tax Court stated the "case for looking beyond the named parties [was] particularly compelling in the[] proceedings, where similarly situated taxpayers not only shared the costs of the litigation but also 'had rights at stake in the case on the merits.'" *Dixon*, 2006 WL 1275497 at *9. We believe *Dixon*'s exception is narrowly cabined to situations involving complex tax litigation where similarly situated taxpayers have foregone individual litigation to further their independent legal claims and shared in the costs of the representative litigation. It is not applicable to situations, such as those present in this case, where an estate

has a sole residuary beneficiary that has no independent legal claim and will only be affected indirectly by the outcome of the Estate's litigation.

For the reasons discussed above we do not believe that any of the decisions applying the real-party-in-interest doctrine dictate that we classify the Charitable Trust as the real party in interest. The application of the statutory language shows that the Estate was the prevailing party who incurred the costs, and therefore is the party who must meet the net worth requirements of § 2412 incorporated into § 7430. To look through the Estate and query whether the beneficiary, or beneficiaries, qualified for recovery of fees under § 7430 would complicate an otherwise straightforward analysis. It would also make § 7340(c)(4)(D) superfluous because we would never consider the net worth requirement imposed on estates, let alone at the specific time Congress required. We decline reading such a rule into the statute.

## IV.

For the foregoing reasons, the District Court properly denied the Estate the fees and costs it sought. Accordingly, we will affirm the District Court's opinion.

22