**DESIGN AND PRODUCTION, INC., Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 553–84C.

United States Claims Court.

April 23, 1990.

ORDER

HORN, Judge.

This application for attorney's fees, filed on January 11, 1990, comes before the court on plaintiff's application for costs and expenses, pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (1982 & Supp. V 1987). Based on a review of the submissions of the parties, the court, hereby, awards $56,451.40 in attorneys' fees and other costs.[1]

---

1. A proposed Stipulation for Entry of Judgment, in an amount different than is included in today's Order was submitted by the parties on March 30, 1990. As a matter of judicial discretion, it has been rejected by this court. Prior to the time the stipulation was filed, the court had

## BACKGROUND

On September 14, 1989, the court issued its Opinion in *Design and Production, Inc. v. United States*, 18 Cl.Ct. 168 (1989). In that Opinion, the court found that the plaintiff, Design and Production, Inc. (hereinafter, D & P), was entitled to recovery on most of its claim, but that the defendant was not entitled to recovery on its counterclaim. Judgement in this case was entered on October 13, 1989, following a joint stipulation by the parties regarding damages in the amount of $728,129.00, together with interest. The award constituted an equitable adjustment for work directed by authorized government officials for the construction of the theater walls, a portion of the acoustical work, painting, installation of the hardware for the theater doors, and portions of the drywall and ceiling work in the queuing and exit areas. The award also included compensation for insurance, bonds and permits, general and administrative expenses and a reasonable profit. Defendant's counterclaim was denied in its totality because the work and equipment for which the defendant sought recovery was either not required by the contract, was deleted from the contract requirements by an authorized representative of the government, or because defendant failed to substantiate its claim at trial.

Plaintiff's original claim arose from the performance of work in the United States Pavilion at the 1984 Louisiana World Exhibition. The plaintiff alleged that, at the direction of Department of Commerce officials, it performed work which was outside the scope of plaintiff's original contract, No. TA–83–SAC–02240. Plaintiff's suit in this court was filed on October 26, 1984, approximately eight months after it submitted its claim for payment to the government, on March 2, 1984, but prior to the issuance of the contracting officer's decision. Following denial of D & P's claim by the contracting officer, on February 1, 1985, based on his finding that the construction of the theaters and the related work was within the scope of the original contract, the defendant amended its previously filed answer, to include a counterclaim.

Plaintiff, D & P, subsequently filed, by leave of court,[2] an amended complaint adding the findings of the Defense Contract Audit Agency's (hereinafter, DCAA) Advisory Audit Report on Contract No. TA–83–SAC–02240, issued on February 14, 1986, in which the DCAA increased the recommended general and administrative costs. In the amended complaint, the plaintiff also claimed that it was entitled to recover the full amount of the subcontract, as well as its overhead expenses, plus a reasonable allotment for profit. The plaintiff further alleged that specific portions of the work performed under the subcontract were additional to the original scope of its contract with the defendant. Specifically, D & P alleged that the following were not within the scope of the contract: construction of demising walls separating the pavilion theaters from adjoining queuing and exit hallways (hereinafter, theater walls), installation of lighting in the theaters, application of acoustical spray to the walls and ceiling in the theaters, and construction of the walls and ceilings in the queuing areas adjacent to the theaters. D & P's claim also included recovery for the cost of the subcontractor's work in constructing the ceiling and performing mechanical work in the projection booth and for installing speaker brackets in the theaters, as well as for insurance, bonds, and permits, pur-

already completed its evaluation of Plaintiff's Application for Costs and Expenses, and, in telephone calls with the Judge's law clerk, the parties were so informed. After reviewing the submissions of the parties and after rereading its own Opinion, issued on September 14, 1989, the court had already concluded that the fee request was justified in the amount of $56,451.40. Endorsement of a stipulation submitted by the parties to a court requires that the court, after its own evaluation, can conclude that the stipulation represents a just and fair result. In the instant case, the court had already concluded that an award different than the one proposed in the stipulation is justified by the law and the facts of the case. Therefore, this Court feels it must reject the proposed stipulation and issue its own decision.

2. The motion was granted on May 16, 1986 by Judge Miller, to whom the case was originally assigned.

chased by the subcontractor in performance of the subcontract.

The government, in its counterclaim, alleged that D & P failed to supply and install all of the electronic equipment that was called for in the contract. The government also alleged that D & P failed to fully perform the work agreed to in the contract in exhibit Areas Three and Eight and for the administrative area of the pavilion.

The plaintiff, D & P, and its attorneys have filed an application to this court in accordance with the Equal Access to Justice Act, 28 U.S.C. § 2412 (1982 & Supp. V 1987) for fees and expenses in the amount of $62,482.66, broken down as follows: $51,848.07 in attorney's fees and expenses; $6,031.26 in consultant fees; $3114.18 for project fees (a scale model); $528.78 for photographs of exhibitry; and $960.37 for trial transcripts. In the application, plaintiff contends that it was the prevailing party in the litigation on a unified claim, that it incurred the fees and expenses in bringing suit against the government, and that it was an eligible party under the Equal Access to Justice Act (hereinafter, EAJA) at the time the suit was filed. Plaintiff also alleges that the position of the United States was not substantially justified and that no special circumstances exist to warrant denial of an award.

The government, argues that D & P is not an eligible party under the EAJA and was not the prevailing party in all aspects of the litigation. The defendant also argues that the position of the government was substantially justified and that special circumstances do exist which would make an award unjust. The defendant finally argues that if, however, D & P is found to be an eligible, prevailing party, the court should segregate the claim into discrete issues and allocate fees accordingly.

## DISCUSSION

Congress enacted the Equal Access to Justice Act to ensure that individuals with limited resources and small businesses would not be "deterred from seeking review of, or defending against, unreasonable government action because of the expense involved in securing vindication of their rights." *Gavette v. Office of Personnel Management*, 808 F.2d 1456, 1459, (Fed.Cir.1986) (citing H.R.REP. No. 1418, 96th Cong., 2d Sess. 5, *reprinted in* 1980 U.S.CODE CONG. & ADMIN.NEWS 4953, 4984). The relevant provision of the EAJA is as follows:

[A] court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action ..., brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances would make an award unjust.

Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) (1982 & Supp. V 1987).

At the same time, it was not intended by those enacting the EAJA that there be a mass subsidization of the costs of litigation to those easily able to afford legal services. The EAJA, therefore, included four threshold eligibility requirements which a party must meet in order to receive an award for fees and expenses:

(1) The party must be the "prevailing party" in the original action. Equal Access to Justice Act 28 U.S.C. §§ 2412(d)(1)(A), (B) (1982 & Supp. V 1987).

(2) The party must have incurred the fees and expenses in that action, as demonstrated in an itemized statement from the attorney or expert witness, stating the actual time expended and the rate at which the fees and other expenses were computed. Equal Access to Justice Act 28 U.S.C. §§ 2412(d)(1)(A), (B) (1982 & Supp. V 1987).

(3) The party's net worth at the time the action was filed was not in excess of $7,000,000 for a corporation ($2,000,000 for an individual). Equal Access to Justice Act 28 U.S.C. § 2412(d)(2)(B) (1982 & Supp. V 1987).

(4) If the party is a corporation, its number of employees at the time the action was filed was not in excess of 500 employees. Equal Access to Justice Act 28

U.S.C. § 2412(d)(2)(B) (1982 and Supp. V 1987).

Once the moving party has satisfied the threshold eligibility requirements under the EAJA, the burden shifts to the government to show that its position was "substantially justified" *Devine v. Sutermeister*, 733 F.2d 892, 894 (Fed.Cir.1984), *Ellis v. United States*, 711 F.2d 1571, 1575 (Fed. Cir.1983) or that special circumstances exist that would make an award unjust, since "the EAJA was not intended to be an automatic fee-shifting device" for a prevailing party. *Gavette v. Office of Personnel Management*, 808 F.2d 1456, 1467 (Fed.Cir. 1986). The court must then review the position of the government in the litigation, on a case by case basis, looking to the record to determine whether or not the government's position was substantially justified. *Id.* at 1467. The EAJA is explicit in providing that the court is required to award fees and expenses, unless the government's position was substantially justified or that special circumstances would make an award unjust. *Id.* at 1465.

Plaintiff asserts, through the unrebutted affidavit of Malcolm N. Zuidema, Executive Vice President of D & P, that the company meets all the threshold eligibility requirements to receive compensation under the Equal Access to Justice Act, 28 U.S.C. §§ 2412(d)(1)(A), (B), (2)(B) (1982 & Supp. V 1987). Defendant does not dispute that D & P satisfies the requirements of 28 U.S.C. § 2412(d)(2)(B) (1982 & Supp. V 1987), in that, at the time the civil action was filed, D & P's net worth did not exceed $7,000,-000.00 and its number of employees did not exceed 500.

The defendant properly urges, however, that this court must also determine whether or not D & P is the real party in interest and has incurred the fees and costs in this litigation. Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(B) (1982 & Supp. V 1987); *see Unification Church v. Immigration and Naturalization Service*, 762 F.2d 1077 (D.C.Cir.1985); *Wall Industries, Inc. v. United States*, 15 Cl.Ct. 796 (1988), *aff'd*, 883 F.2d 1027 (Fed.Cir.1989). In the instant case, it is undisputed that D & P is a wholly-owned subsidiary of VSE Corporation (hereinafter, VSE). Defendant argues that VSE, not D & P, is the real party in interest since the president and both executive vice-presidents of D & P are president and senior vice-president and vice-president, respectively, of VSE, and one of the director's of D & P is also a director of VSE. Defendant also raises questions concerning whether or not D & P and VSE occupy the same offices, whether or not executives of VSE oversee and direct the operations of D & P, and to what extent VSE executives are involved in the administrative and financial decisions of D & P. Defendant argues that these factors are evidence that VSE, which might not be found eligible for compensation under the EAJA, is the real party in interest.

Defendant analogizes its position to that of the government in *United States v. Lakeshore Terminal and Pipeline Co.*, 639 F.Supp. 958 (E.D.Mich.1986), in which the parent corporation of a wholly-owned subsidiary was determined to be the real party in interest. Defendant suggests that VSE is similar to the parent corporation in *Lakeshore* and, likewise, should be established as the real party in interest in the instant case. Although, plaintiff, D & P, concedes that it is a wholly-owned subsidiary of VSE, plaintiff argues that according to the "totality of facts" approach, adopted by the court in *Lakeshore*, D & P is the real party in interest in the instant case.

In *Lakeshore*, the District Court considered the "totality of facts" in determining whether or not the parent corporation was the real party in interest. *Id.* at 962. The Michigan District Court found it persuasive that the parent corporation performed "various administrative, accounting, insurance and auditing functions at Lakeshore" and that the companies had the same president and occupied the same offices. *Id.* However, the District Court's focus was on the interest and active involvement of the Railway Company (the parent corporation) in the case. *Id.; see Wall Industries v. United States*, 15 Cl.Ct. 796, 804 (1988). Moreover, the *Lakeshore* court specifically pointed to the active in-

volvement of the parent company in the case, including that the General Counsel of the Railway Company was involved in the early correspondence concerning the object of the contract with the government and that the Railway Company had a stated interest in the object of the contract. *Lakeshore,* 639 F.Supp. at 962. Based on the totality of facts, the District Court determined that the Railway Company was the real party in interest. The District Court specifically pointed out, however, that "it does not believe that the fact that Lakeshore is a wholly owned subsidiary of the Railway Company is, in itself dispositive" of whether or not the parent company was the real party in interest. *Id.*

In *Wall Industries v. United States,* the court found that the plaintiff, which had assigned its rights in the case to its accountants, Arthur Young, was ineligible under the EAJA because it had failed to incur any legal expenses in the action. 15 Cl.Ct. at 802. The *Wall* Court, which followed the *Unification Church* case test for real party in interest and the *Lakeshore* court's "totality of facts" approach found that:

> By the terms of the settlement agreement ... it was Arthur Young who, as a condition for the payment of $291,045 to Wall, required Wall to initiate the action, it was Arthur Young who selected the attorneys to prosecute the refund claim, and it was Arthur Young who controlled the tactics and strategies used in the litigation. Thus, no credible evidence was proffered establishing that Wall assumed any responsibility to pay for the legal fees and other expenses incurred in the refund litigation.

*Id.*

In the instant case, the similarities to the facts in *Lakeshore* and *Wall* are limited, although it is conceded in the instant case that, as in the *Lakeshore,* the presidents and certain vice presidents of D & P overlap. The plaintiff, D & P, in its application for fees and expenses, however, has offered the unrebutted affidavit of Malcolm N. Zuidema, Executive Vice President of D & P, to show that D & P acted independently of VSE in bringing the civil action, that VSE never took an active role in the litigation, that VSE did not finance D & P's claim, that D & P's offices are at a different location from VSE's main office and that D & P performs its own administrative, accounting, and insurance functions.

Furthermore, in the instant case, no evidence has been presented to suggest that VSE will be the "sole beneficiary of this attorney's fees application" or that VSE was "actively involved in the underlying litigation." *See Wall,* 15 Cl.Ct. at 804. Also, there is no evidence that VSE performs administrative, accounting, insurance, or auditing functions for D & P. *See Lakeshore,* 639 F.Supp. at 962. In addition, there was no evidence presented that VSE and D & P occupy the same offices. The fact that D & P's president and both executive vice-presidents are also president and senior vice-president and vice-president, respectively, of VSE, that one of the directors of D & P is also a director of VSE, and that D & P is a wholly-owned subsidiary of VSE, is not, in itself, sufficient to prove that VSE is the real party in interest.

Based on the totality of the facts provided by the plaintiff in its application and the affidavits, as submitted, this court finds that D & P is the real party in interest. Moreover, based on a review of plaintiff's submissions, this court also determines that D & P incurred fees and expenses in the underlying case, as required by the statute, to be eligible for award of attorney's fees and costs under the EAJA. 28 U.S.C. § 2412(d)(1)(A) (1982 & Supp. V 1987).

Next, under the EAJA, the court must determine whether or not D & P is the "prevailing party" as required by the statute. EAJA, 28 U.S.C. § 2412(d)(1)(A) (1982 & Supp. V 1987). D & P asserts that it is a "prevailing party" within the definition of the EAJA since it was awarded an equitable adjustment by this court on its contract with the government. The government does not contest that D & P is a "prevailing party," but argues that the plaintiff is not a prevailing party in certain

distinct issues in the case, specifically: (1) that D & P did not prevail on its claim for $189,000.00 for increased expenses in installing electric lighting, (2) that D & P did not prevail on its claim regarding various change orders, (3) that D & P conceded after trial that the installation of handrails was work within the contract, and (4) that D & P cannot be viewed as prevailing on the counterclaim.

■ The standards which the Supreme Court stated "are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party' " were announced by the in *Hensley v. Eckerhart*, 461 U.S. 424, 433, n. 7, 103 S.Ct. 1933, 1939, n. 7, 76 L.Ed.2d 40 (1983). According to the Supreme Court in *Hensley*, the " 'plaintiffs' may be considered 'prevailing parties', and eligible to collect attorney's fees, if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley* at 433, 103 S.Ct. at 1939 (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978)).

Furthermore, the Court indicated that:

> Where a plaintiff obtained excellent results his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. . . . Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

*Hensley*, 461 U.S. at 435, 103 S.Ct. at 1940.

This formulation provides wide latitude for a party seeking to be qualified as a "prevailing party." The United States Court of Appeals for the Federal Circuit and the United States Claims Court have both endorsed the *Hensley* formulation to qualify various applicants under the EAJA

as "prevailing parties." The United States Court of Appeals for the Federal Circuit has stated that: "a prevailing party should not be denied fees for its failure to prevail on every procedural motion or claim where there is no clear distinction between the former and that party's ultimate success on the merits." *Devine v. Sutermeister*, 733 F.2d 892, 897 (Fed.Cir.1984).

In *Kunz Constr. Co.*, 16 Cl.Ct. 431 (1989), the Judge found the applicant to be a "prevailing party" under the *Hensley* formulation, even though the plaintiff prevailed only on some issues. *Id.* at 435. In *United Constr. Co. v. United States*, 12 Cl.Ct. 514 (1987), the plaintiff was found to be a prevailing party, although it was only successful in the defense of a counterclaim. And, in *Everett Plywood Corp. v. United States*, 3 Cl.Ct. 705 (1983), the Claims Court found the plaintiff to be a prevailing party, despite the fact that it was only successful in discrete phases of the litigation. *Id.* at 709.

■ The court now turns to the defendant's contention that although plaintiff is a prevailing party, it did not prevail on the merits on certain issues in the underlying case and should not be entitled to recover attorney's fees for those portions of the case on which it did not prevail. The court notes, initially, that the plaintiff and defendant disagree as to the number of claims involved in the case. The plaintiff argues that the case involves a single claim, comprised of eight sub-categories of work for which the defendant owes monies. The government, however, contends that D & P did not prevail in all aspects of the litigation, and specifically points out that D & P did not prevail on its allegation that it was owed $189,000.00 for increased expense in installing electric lighting; that D & P did not prevail regarding various change orders; that D & P conceded after trial that the installation of handrails was work within the contract; and that D & P should not be viewed as prevailing on the counterclaim. The government asserts that each of these are separate and distinct claims and implies that they are unrelated.

This court disagrees with the defendant's multiple claim argument. D & P's lawsuit, as filed, was based on a single certified claim under the contract for supplementary work performed, which although it was subsequently amended did not, thereby, become multiple claims. In fact, in his final decision, the contracting officer denied all of the plaintiff's claim on the same theory, that all of the additional work for which the plaintiff claimed compensation was within the scope of the original contract. Moreover, all the work for which compensation was sought by the plaintiff was performed by the same subcontractor.

Although this court, in its Opinion issued on the merits on September 14, 1989 (18 Cl.Ct. 168 (1989)), chose for the purposes of convenience and clarity to analyze each expense item for which a claim was filed by the plaintiff separately, and so stated in its Opinion, this approach should not have been interpreted to mean that plaintiff's claim was filed other than as a unified claim.[3] Moreover, at the end of the Opinion, the court indicated that "the court hereby GRANTS in part and DENIES in part plaintiff's *claim* for an equitable adjustment of the contract price." *Id.* at 219 (emphasis added). The court then uses the following terms when detailing the specific monetary awards under the claim, "invoice category.", "invoice work category", or "items of work" at issue. *Id.* at 219–20. Therefore, for purposes of analysis under the EAJA, based on the facts of the case and a rereading of the Opinion, this court finds that the claim by D & P should be considered as one claim, consisting of many subparts.

D & P failed to prevail in the lawsuit only on those items for which the court found the work to be within the contract and for which the work was performed pursuant to direction from government officials who did not have the authority to bind the government. The contracting officer and this court based their respective decisions on a common core of facts and related legal theories. Moreover, plaintiff's affirmative claim and defense of the counterclaim were also based on a common set of facts and interrelated legal theories.

Assuming, however, that more than one claim had been involved in this case, under *Hensley*, the determinative issue for determining the award of attorney's fees is not whether a single claim or multiple claims can be documented. 461 U.S. at 435, 103 S.Ct. at 1940. As the court stated in *Hensley:*

> In other cases the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims.

*Id.* In the instant case, the lawsuit was related to a common core of facts and related legal theories were certainly at issue in both the presentation of plaintiff's case and the plaintiff's defense of the counterclaim. In addition, the plaintiff, D & P, prevailed to a significant extent in the case. In such circumstances, the *Hensley* court stated that the court:

> . . . should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation. Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. . . . [T]he fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.

*Id.*

Careful study of the record, guided by the Supreme Court's position in *Hensley,*

---

3. The court grants that one sentence at the beginning of the Discussion part of its Opinion, was less than artfully drafted, and utilized the plural form of the word claim. "The discussion which follows addresses the elements of plaintiff's *claims* and then discusses defendant's counterclaims" *Design & Production Inc.* at 196

(emphasis added). However, the sentence directly after it, which summed up the results of the court's decision, clearly referred to one claim by the plaintiff. "The court finds that plaintiff's *claim* for an equitable adjustment of the contract should be GRANTED in part and DENIED in part." *Id.* (emphasis added).

*supra,* leads this court to conclude that the case at bar should not be segregated into separate issues or claims for purposes of analysis under the EAJA. Assuming, plaintiff is entitled to attorney's fees under the EAJA, any award of attorney's fees in this case should be based on the claim as a whole and on a judgment as to whether the hours billed and the rates charged were appropriate.

■ The court now turns to the questions of whether or not the government was substantially justified in its position or whether or not special circumstances exist in this case which would make an award unjust, either of which would bar recovery under the EAJA 28 U.S.C. § 2412(d)(1)(A) (1982 & Supp. V 1987). In *Pierce v. Underwood,* 487 U.S. 552, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), the Supreme Court set forth the standard for whether or not the government was "substantially justified" for the purposes of evaluating appropriate attorney's fees. The Supreme Court stated that substantially justified means " 'justified in substance or in the main' that is justified to a degree that could satisfy a reasonable person." 487 U.S. at 565, 108 S.Ct. at 2550 (citations omitted).

The government correctly points out that a trial court cannot automatically make a grant of attorney's fees even to a party qualified to receive an award under the EAJA. Based on case law, "substantial justification is to be decided case-by-case, on the basis of the record." *Gavette v. Office of Personnel Management,* 808 F.2d 1456, 1467 (Fed.Cir.1986) or, otherwise stated, "upon all the pertinent facts of the case." *Broad Avenue Laundry and Tailoring v. United States,* 693 F.2d 1387, 1391 (Fed.Cir.1982). According to the Supreme Court, it is for the trial court to determine whether or not the position of the United States was substantially justified, and the trial court's determination is due "some deference on appeal." *Pierce v. Underwood,* 487 U.S. at 559, 108 S.Ct. at 2547.

In analyzing the issue of whether or not the government's case was substantially justified, the defendant argues that the court should segregate the case into separate claims and address each of the government's arguments separately, since the government contends that its position was composed of several legal arguments, in discrete phases of litigation or in defense or assertion of distinct claims. The government concludes that failure to segregate fees under those circumstances could rise to an abuse of discretion.

In *Devine v. Sutermeister,* 733 F.2d 892 (1984) the Court of Appeals for the Federal Circuit stated that:

> [w]hether a court should individually evaluate each motion or issue in a case is essentially a matter of judgement for the court, as this decision is closely tied to the unique facts of each case. It is difficult to generalize whether a 'phase' is 'sufficiently significant and discrete to be treated as a separate unit' for purposes of an award of attorney's fees.[4]

733 F.2d at 896 (footnote and citations omitted).

In the instant case, as discussed above, the common core of facts and the single claim upon which the lawsuit was based, does not support a separate analysis of the issues for the purposes of determining whether or not the plaintiff is entitled to attorney's fees under the Equal Access to Justice Act. In fact, D & P's claim was based on a single contract, was for work done at a single site, albeit the work was divided into different tasks. The fact that different tasks were necessary to complete the job, however, does not make each task a separate and distinct claim for litigation purposes.

Nonetheless, to fully address the government's arguments, the court deems it appropriate to address, at least briefly, the examples cited by the defendant, which the government claims support its contention that its position was reasonable and, therefore, justified.

Defendant, first, argues that although the court held that the contract did not

---

**4.** It should be noted that "phases" of litigation was defined in *Devine v. Sutermeister* to mean "trial versus appeal, merits versus damages."

733 F.2d at 896. Under this definition, there were no distinguishable phases of litigation in the underlying case brought by the plaintiff.

explicitly require construction of the interior theater walls, the government's position was based on a reasonable interpretation of the contract. Defendant asserts that reasonable people might disagree as to the interpretation of the contract, and that the government's position could satisfy a reasonable person. After careful review of the record, the court disagrees. The contracting officer and other government officials testified at trial that the contract did not expressly state that the plaintiff was responsible for constructing the walls. Also, this court noted in its September 14, 1989 Opinion that the defendant "glaringly misrepresent[ed]" the requirements of the contract and "misleadingly quotes" from the Scope of Work in the main part of the solicitation to support its position on construction of the walls. *Design and Production*, 18 Cl.Ct. at 196. As stated in the court's Opinion on the merits, the contract was unambiguous and the statement of work did not include construction of the theater walls. As an unambiguous contract, it is not subject to different interpretations by reasonable people.

The government next argues that it was reasonable for the defendant to interpret "administrative area" as defined in the contract to include the queuing area, the exit area, and the doors and door frames. This was not, however, the argument that defendant made at trial. At trial, the defendant offered the general argument that the plaintiff was responsible for " 'painting or finishing of wall surfaces' in the Pavilion." *Id.* at 204. The defendant's argument made no reference to the "administrative area." The court, in its Opinion, however, pointed out that the particular language at issue was taken from the paragraph of the contract entitled "Administrative Area." The court found that painting of the queuing and exit areas, doors and door frames, and the mechanical and electrical surfaces was outside the scope of the requirements of the contract, and that the plaintiff was entitled to equitable compensation for this item. *Id.* Defendant now suggests that it interpreted "administrative area" to include the above stated areas. The fact that the government attempts to amend its liti-

gation position concerning this point is indicative of the weakness of its original defense. Even if the government had made this argument at trial, which on examination of the record it clearly did not, a reading of the contract reveals that the painting of the wall surfaces in the queuing and exit areas, doors and door frames, and mechanical and electrical surfaces was not within the scope of the "administrative area."

The defendant also asserts that it was reasonable for the government to take the position that the acoustical treatment was a specific contract requirement and that the plaintiff was responsible for any increased costs in that area. This interpretation, however, conflicts with the facts. As noted in the court's earlier Opinion, following the dispute between the parties concerning the construction of the theaters, the government directed that the plaintiff "proceed with the January 17, 1984 design, effecting whatever cost savings plaintiff could realize." *Id.* This necessarily required plaintiff to conduct additional work, outside the scope of the contract, leaving only the dollar value of that work in dispute. Once again, the court finds that the defendant's position contesting attorney's fees on this item is not substantially justified based on the government direction to proceed with the work.

The government next argues that its position on the change orders which were authorized by a government official who did not have the authority to issue change orders, was reasonable, since the court found that the plaintiff could not recover for work performed pursuant to change orders, except those authorized by Mr. Chambers. The defendant further argues that it was reasonable for the government to contend that Mr. Chambers was not an official with the authority to issue change orders, even though the court found otherwise. Referring to the record, the court does find that the government's legal position with regard to change orders made by officials other than Mr. Chambers was reasonable. However, based on the facts, the court reaffirms its position that the govern-

ment's position with regard to change orders authorized by Mr. Chambers is incorrect. As more fully discussed in the Opinion on the merits, based upon the facts that Mr. Chambers was the Acting Commissioner General of Section, Office of World's Fairs and International Expositions, a senior government official who was on site, who represented the government in various matters relating to the pavilion, and who signed the pavilion lease contract between the Louisiana World Exposition and the Government, it was quite reasonable to assume that Mr. Chambers did, in fact, have the authority to bind the government in D & P's contract. This implied authority was discussed at length in the court's Opinion and is supported by case law. *Id.* at 207; *see, Wieman v. United States,* 230 Ct.Cl. 563, 573, 678 F.2d 207 (1982).

Nonetheless, regarding the change orders, this court does not think it is appropriate to attempt to apportion fees, since there is no clear distinction between the law and the facts at issue on those parts of the plaintiff's claim on which he prevailed and on those parts on which he failed to receive compensation. *See Hensley,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) and cases which came after it, as discussed more fully above.

The government also suggests that its position regarding the counterclaim was substantially justified. The government submits that since the plaintiff's arguments in defense of the counterclaim were rejected, the government's position was substantially justified.

The court does not find defendant's position persuasive. The defendant made a conscious decision to bring the counterclaim, not the plaintiff. For example, the government argues that its position at trial that plaintiff was required to paint the walls in the administrative area was reasonable, especially since the court found this explicit within the contract. Although the court did make this finding, the court also found that the evidence which defendant submitted was "wholly inadequate to prove the amount of damages." *Design and Production,* 18 Cl.Ct. at 219. The

statute clearly indicates that it is the position of the United States which must be considered and it is clear from the record as reported in the Opinion issued on September 16, 1989, that the defendant, despite its decision to file the counterclaim, could not substantiate damages therefore, could not prevail on the counterclaim. As the court stated, the defendant "failed to provide the court with sufficient evidence to allow the court to determine the appropriate award." *Id.*

Likewise, the defendant also based its counterclaim for equipment not delivered and for alleged deficiencies in contract performance regarding Areas Three and Eight on D & P's cost proposal, which document was never integrated into the contract. The government argues, nonetheless, that its position regarding the electronic equipment and Areas Three and Eight were substantially justified. This cannot be viewed as a reasonable position since only "the solicitation and plaintiff's technical proposal, as revised, were incorporated specifically into the contract, whereas the cost proposal was not made part of the original contract." *Id.* at 214. The defendant, however, argues that since the court admitted the cost proposal as parol evidence of the parties' intent, it was reasonable for the government to rely on it to support whether or not the government received the value for which it had bargained. Defendant is broadening the scope of the use for which the court admitted the parol evidence. It was limited to the court's evaluation of the intent of each party with respect to the contract formed. In addition, in the case at issue, there was no mention of particular items or quantities of electronic equipment in the contract; the items on the list used by the plaintiff were taken from the plaintiff's cost proposal, not from any of the documents incorporated into the contract.

Once again, although defendant's counterclaim for electronic equipment and work in Areas Three and Eight may have had some theoretical validity, the defendant failed to present sufficient evidence to prove damages. As stated above, it was the defendant who decided to file a coun-

terclaim, a decision which seems unreasonable if no damages could be established at trial.

Based on the record, the court finds that the government has not carried its burden of proof and has failed to show that the United States was substantially justified in either its defensive arguments in response to plaintiff's claim or in its assertion of the counterclaim. Thus, unless the government can show that special circumstances exist which would make an award unjust, this court must award attorney's fees and costs to the plaintiff. In support of its position that special circumstances exist which would make an award unjust under the EAJA, defendant repeats its argument that D & P's parent corporation is a large and well-financed corporation, and tries, thereby, to suggest that D & P is not the type of business intended by Congress to benefit from the EAJA.

As stated earlier, the fact that D & P is a wholly-owned subsidiary of VSE, in itself, is not determinative of whether or not D & P should be eligible to receive an award under the EAJA. The special circumstances exception to the EAJA was defined by Congress as a "safety valve" to, among other things, "allow the court discretion to deny awards where equitable considerations dictate an award should not be made." H.R.Rep. No. 1418 at 11, *reprinted in* 1980 U.S.CODE CONG. & ADMIN. NEWS at 4990. This court believes that if Congress had intended to preclude all subsidiaries of large corporations from availing themselves of protection under the EAJA, Congress would have directly said so. Since the defendant has not offered for the court's consideration any other "special circumstances" which might act to bar an award of attorney's fees to D & P, this court finds that D & P is also not precluded from an award due to the special circumstances provision of the EAJA.

Defendant finally argues that plaintiff is not entitled to the full amount of fees and costs claimed even if D & P is found by the court to be eligible to receive an award of such fees under the Equal Access to Justice Act. Defendant argues that the fees should be apportioned and any award should be limited to those claims on which D & P prevailed and on which the government's position was not substantially justified. However, this court has already determined that plaintiff's claim in the underlying case was in fact a single claim, and, therefore, rejects defendant's arguments which assert that fees should be apportioned.

The court, therefore, finds that based on the record, and consistent with the Opinion on the merits issued by this court on September 14, 1989, D & P is the "prevailing party" in the case at bar, consistent with the *Hensley* approach, since it prevailed on the vast majority of its claim and persuaded the court that its theory of the lawsuit was correct. The court also finds that D & P has satisfied each of the threshold eligibility requirements for compensation under the EAJA, as specified in 28 U.S.C. § 2412(d) (1982 & Supp. V 1987) and certifies D & P as an "eligible prevailing party" under the Act.

Although there are numerous federal statutes authorizing the award of attorney's fees, generally to a prevailing party, *See* 11 Attorney Fee Reporter (P–H) No. 2 at 2 (Apr.1988), most of these statutes provide for the reimbursement of "reasonable attorney's fees" with little, if any, guidance as to what is "reasonable." In *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the Supreme Court said that "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Id.* at 424, 103 S.Ct. at 1933.[5] The Court stated that the lodestar is subject to adjustment upward or downward

---

**5.** The calculation of hours reasonably expended times a reasonable hourly rate is often referred to as the "lodestar." *See* E. Richard Larson, *Federal Court Awards of Attorneys' Fees* (1981) 122–24.

based on other considerations. *Id.* at 434, 103 S.Ct. at 1939.

In calculating reasonable attorney's fees, the second step is the more subjective. The "lodestar" figure can be adjusted, either upward or downward, through the application of various additional factors. Among the factors to be considered are those identified in *Johnson v. Georgia Highway Express*, 488 F.2d 714 (5th Cir. 1974), as follows: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

The resulting figure is presumed to represent a reasonable fee, to which the petitioning attorney is entitled. *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). "In requesting statutory fees, an attorney must use the same 'billing judgment' as an attorney would in billing a client." *Hensley*, at 434, 103 S.Ct. at 1940. The reasonable hourly rate is determined by looking to "the prevailing market rates in the relevant community" for similar services by lawyers of comparable skill, experience, and reputation. *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984).

Recently, in *Blanchard v. Bergeron*, 489 U.S. 87, 109 S.Ct. 939, 944–45, 103 L.Ed.2d 67 (1989), the Supreme Court reaffirmed the approach and standards set forth in *Hensley*. The lodestar approach to determining reasonable attorney's fee awards also has been applied by this court and other courts in cases in which the United States was a defendant. *See, e.g. Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1517 (D.C.Cir.1988) (en banc); *Crumbaker v. Merit System Protection Board*, 781 F.2d 191 (Fed.Cir.1986), *modified* (on other grounds), 827 F.2d 761 (Fed.Cir.1987); *Martin v. United States*, 12 Cl.Ct. 223, 227 (1987). More recently, it has been widely approved by the members of this court as an appropriate basis for determining fee awards in cases brought under the National Vaccine Injury Compensation Act. *Morris, et al. v. Secretary of Health and Human Services*, 20 Cl.Ct. 14 (1990); *Clark v. Secretary of Health and Human Services*, 19 Cl.Ct. 113 (1989); *Willcox v. Secretary of Health and Human Services*, 18 Cl.Ct. 870 (1989); *Dunham v. Secretary of Health and Human Services*, 18 Cl.Ct. 633 (1989); *Reddish v. Secretary of Health and Human Services*, 18 Cl.Ct. 366 (1989); *Ciotoli v. Secretary of Health and Human Services*, 18 Cl.Ct. 576 (1989).

The fee applicant carries the burden of proof. *Blum v. Stenson*, 465 U.S. 886, 896 n. 12, 104 S.Ct. 1541, 1547, n. 12, 79 L.Ed.2d 891 (1984). To meet the burden, the applicant must submit evidence supporting the number of hours expended and the hourly rates claimed. As stated in *Martin v. United States:*

> A party submitting an application for an award of attorney fees should present evidence that supports hours worked at the rates claimed. Where supporting documentation is inadequate, the award may be reduced accordingly. A party who seeks payment must keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and the need for the service, and the reasonable fee to be allowed.

*Martin v. United States*, 12 Cl.Ct. 223, 227 (citing *Hensley v. Eckerhart*, 461 U.S. at 429, 433, 441, 103 S.Ct. at 1937, 1939, 1943). To demonstrate "reasonable hours" worked, the applicant should provide contemporaneous time records and a personal affidavit in support of the fee petition. The applicant need not account for every minute expended. However, "at least counsel should identify the general subject matter of his time expenditures." *Hens-*

*ley*, 461 U.S. at 437 n. 12, 103 S.Ct. at 1941 n. 12.

In support of his application for attorney's fees, on January 11, 1990, plaintiff's attorney, Richard J. Webber, of the law firm of Arent, Fox, Kintner, Plotkin & Kahn, submitted an extensive and detailed affidavit which, among other things, included an accounting of expenses and the attorney responsible therefor, as well as the hours devoted to each task and the corresponding dollar amounts charged. Furthermore, plaintiff's counsel submitted the affidavit of Malcolm N. Zuidema, Executive Vice President of Design and Production, which served as a supplement to Mr. Webber's affidavit, and addressed the issues of the costs incurred in the case.

### 1. *Reasonable Hourly Rate*

■ In calculating a reasonable hourly rate, the court must consider "the prevailing market rate in the relevant community" for similar services by lawyers of comparable skill, experience and reputation. *Blum v. Stenson*, 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). The Supreme Court noted in *Blum* that "determining an appropriate 'market rate' for the services of a lawyer is inherently difficult" and that "the hourly rates of lawyers in private practice also vary widely." *Blum*, 465 U.S. at 895 n. 11, 104 S.Ct. at 1547 n. 11. In discussing the applicant's burden, the court stated that:

> To inform and assist the court in the exercise of its discretion [to award fees], the burden is on the fee applicant to produce satisfactory evidence—in addition to the attorney's own affidavits— that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. A rate determined in this way is normally deemed to be reasonable and is referred to—for convenience—as the prevailing market rate.

*Id.* at 895 n. 11, 104 S.Ct. at 1547 n. 11.

Proof of prevailing market rates for a lawyer's services may be demonstrated in a number of ways, including: (1) affidavits of other attorneys or experts; (2) citations to prior precedents showing reasonable rate adjudications for the fee applicant, for comparable attorneys, or for comparable cases; (3) references to fee award studies showing reasonable rates charged or awarded in the relevant community; (4) testimony of experts or of other attorneys in the relevant community; (5) discovery of rates charged by the opposing party; and (6) reliance on the court's own expertise to recognize applicable prevailing rates. H. Newberg, *Attorney Fee Awards* 198 (1986).

In support of his claim for attorney's fees, Mr. Webber's affidavit claims rates of $75.00 for himself and presumably for the other attorneys at Arent, Fox, Kintner, Plotkin, and Kahn, and $55.00 for Bruce J. Moldow and library legal staff.

The $75.00 rate falls squarely within the rate which is permitted by the EAJA. 28 U.S.C. § 2412(d)(2)(A) (1982 Supp. V 1987), states:

> (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that (i) no expert witness shall be compensated at a rate in excess of the highest rate of compensation for expert witnesses paid by the United States; and (ii) attorney fees shall not be awarded in excess of $75.00 per hour unless the cost of living or a special factor such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.)

■ In determining a reasonable hourly rate, the knowledge and expertise of an attorney performing given work in a given case is an important element. Because the applicant in this instance bears the burden of proof, "generalized and conclusory 'information and belief' affidavits from friendly attorneys" presenting a wide range of hourly rates, will not suffice. *Nat'l Assoc. of Concerned Vets. v. Sec. of Defense*, 675 F.2d 1319, 1325 (D.C.Cir. 1982). Moreover, to justify an hourly rate, not only must counsel demonstrate that he is skilled in the subject area, he must also

produce evidence that those skills were needed in providing the services in the case in question. *See Blum,* 465 U.S. at 895, 104 S.Ct. at 1547.

In the case at bar, Arent, Fox, Kintner, Plotkin & Kahn is a large law firm based in the Washington, D.C. area. A market rate of $75.00 per hour for an attorney, undoubtedly, is well below the rate normally charged for work done by lawyers in the firm, including for associates. Based on the forgoing, as well as the information provided by both parties in their submissions on this issue, the court firmly believes that $75.00 per hour for attorneys, as well as $55.00 per hour for library support staff is certainly reasonable. Moreover, this fee must be presumed acceptable to the defendant's counsel, since the defendant has not raised an objection thereto in its Response to Plaintiff's Application for an Award Under the Equal Access to Justice Act. Therefore, this court finds that $75.00 and $55.00 per hour, for attorneys and library support staff, respectively, is a reasonable rate to be applied in the instant application for attorney's fees.

2. *Reasonable Hours Expended*

■ In reporting time expended, the applicant need not account for every minute. However, "at least counsel should identify the general subject matter of his time expenditures." *Hensley,* 461 U.S. at 437, n. 12, 103 S.Ct. at 1941, n. 12. Once counsel appropriately identifies his time, those hours which reflect "excessive, redundant, or otherwise unnecessary" hours must be excluded by the court. *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939–40. In requesting statutory fees, an attorney must use the same "billing judgment" as an attorney would in billing a client. "Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940 (citing *Copeland v. Marshall,* 205 U.S.App.D.C. 390, 401, 641 F.2d 880, 891 (1980) (en banc) (emphasis in original)).

In the case at bar, plaintiff's attorney submitted 22 pages of documentation in support of his attorney's fees request. In this detailed submission, plaintiff's counsel has indicated the attorney who performed the work, the type of work involved, the date the work was performed, the time required to complete each item, as well as the total dollar amount for each item.

Defendant's counsel appears generally to take issue with the amount of time plaintiff's counsel devoted to "each claim." While the defendant raises the issue, it fails to specifically reference any items or tasks included in the plaintiff's submission of hours spent, which it deems to be inadequate. Moreover, defendant fails to even acknowledge Supreme Court precedent which clearly indicates that a fee applicant need not account for every minute. *See e.g., Hensley,* 461 U.S. at 431, 103 S.Ct. at 1938. In sum, defendant's general assertions do not rise to a level sufficient to overcome the plaintiff's detailed and comprehensive fee application.

Therefore, after a careful and thorough review of the plaintiff's submission, the court finds that all the hours for which the plaintiff has claimed reimbursement are carefully and fully documented and appear to the court to be reasonable.

■ With respect to the plaintiff's claim for reimbursement for certain costs, the government contends that the $3,059.61 expense for constructing a model of the theater for use at trial was excessive since less expensive charts and drawings could have been used. The court found the model very useful at trial and during deliberations to understand the intricacies of the contract, of the design and of the nature of the dispute. Although the court finds the cost of the model to be on the high side, no evidence has been presented to the court that a model of similar detail and usefulness could have been prepared for less money. The court also notes that defendant's attorney took advantage of and referred to plaintiff's model during the trial, presumably because the defendant also found it useful in presenting its case. The court, therefore, finds that because the model was utilized to everyone's benefit and by each of the participants in the litiga-

**222**

tion, including the court, the court will allow the expense claimed for the model.

■ The government also objects to paying Mr. Harotounian and Mr. Wright an hourly rate, or paying Mr. Harrell's travel expenses, since the government contends that they were fact witnesses involved in the events which led to this lawsuit, and, therefore, those expenses are not recoverable under the EAJA. According to the statute, recovery is available for "the reasonable expense of expert witnesses, the reasonable cost of any study, analysis, engineering report, test or project which is found by the court to be necessary for the preparation of the party's case." 28 U.S.C. § 2412(d)(2)(A) (1982 & Supp. V 1987). Clearly, Mr. Harotounian, Mr. Wright, and Mr. Harrell were not qualified as expert witnesses. Plaintiff, however characterizes these individuals as "consultants" who assisted counsel in preparation for trial. Although it may be true that Mr. Harotounian, Mr. Wright, and Mr. Harrell contributed to D & P's preparation for trial, they were each participants in the events which led to this lawsuit. Thus, the court finds that these individuals were fact witnesses who were a necessary part of D & P's case and were not "consultants" or experts within the meaning of the EAJA as previously articulated by the Claims Court. *Esprit Corp. v. United States*, 15 Cl.Ct. 491, 494 (1988). The claim for reimbursement of their expenses should be denied.

Plaintiff also requests $528.78 for photographs of exhibitry and $960.37 for trial transcripts. Defendant does not contest these items and the court finds them allowable and appropriate expenses under the Equal Access to Justice Act.

Therefore, plaintiff is entitled to recover attorneys' fees and expenses, project fees, fees for photographs of exhibitry, and trial transcript fees in accordance with its claim; however, plaintiff is not entitled to the consultant fees listed in its application.

## CONCLUSIONS

For the reasons set forth in this opinion, plaintiff is an eligible prevailing party in this case and is GRANTED an award pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) (1982 & Supp. V 1987), for costs and other expenses in the amount of $56,451.40. Judgement will be entered in that amount.

IT IS SO ORDERED.